EDITH M. BINNEY *vs.* GLOBE NATIONAL BANK & another.

Suffolk.    November 21, 1889. — January 4, 1890.

Present: FIELD, DEVENS; W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Insolvent Debtor — Married Woman — "Person" — Promissory Note — Agent to fill Blanks — Indorser — Affidavit.*

An application to this court, under the Pub. Sts. c. 157, § 15, to vacate proceedings in insolvency, does not bring before it the whole case, but only those points respecting which the petitioner alleges that he is aggrieved.

A married woman indorsed a printed blank promissory note, at her husband's request, and handed it to him, with the knowledge that it was to be filled up and used by him, but never saw it again. Afterwards he filled up the blank and signed it in her absence, and negotiated it before maturity at a bank which took it in good faith for full value. She received directly no consideration for it, though the proceeds were used partly for the family expenses. *Held,* that she was liable as indorser upon the note.

In an action, described in the writ as an "action of contract," against a married woman, an attachment was made on her property, which she did not dissolve before the return day of the writ. No declaration was contained in the writ, nor did she ever demand a copy thereof. *Held,* that she was liable to be proceeded against in insolvency, under the Pub. Sts. c. 157, § 112.

A petition in insolvency against a married woman alleged that an action, in which she had failed to dissolve an attachment, was duly entered, and was still pending

against her, but did not aver in terms that service of the writ was made upon her. On an application under the Pub. Sts. c. 157, § 15, to this court, it was agreed by counsel that such service was actually made. *Held*, that she had no ground of complaint.

The affidavit appended to a petition in insolvency recited that its allegations were true, according to the best knowledge and belief of the affiant. *Held*, that the affidavit was sufficient.

PETITION IN EQUITY, under the Pub. Sts. c. 157, § 15, to vacate proceedings in insolvency brought against the petitioner by the first named respondent. The other respondent was the messenger in insolvency. The case was heard by *C. Allen*, J., and was as follows.

The petitioner, who was the wife of George H. Binney, at his request put her name on the back of two printed blank instruments, and gave them to him. Afterwards he filled up the blanks therein, signed them, and severally indorsed them by writing his name above hers. The face of the first instrument, which differed from the second only in date and time, then read as follows, the printed words and figures being in Roman letters, and the written in Italics.

" *$10,000.* Boston, *December 1st*, 1888. *Four months* after date *I* promise to pay to the order of *myself Ten thousand* $\times/\overline{100}$ Dollars. *Payable* at *Globe National Bank.* Value received. No. *2.* Due *Apr. 1st–4th/89.* *Geo. H. Binney.*"

Both instruments were annexed to the petition as exhibits. He presented the instruments, thus filled up, signed, and indorsed, to the respondent bank, which in good faith and for full value discounted them, and upon their non-payment at maturity protested them, and was still the holder of them. Afterwards the respondent bank and the National Bank of the Republic, which latter was the holder of a similar overdue and unpaid instrument discounted by it for the petitioner's husband, severally brought actions against the petitioner, and attached her real estate and other property upon the writs, each of which described them as an " action of contract." The petitioner did not before the return day of the writs dissolve such attachments in the manner provided by law, but she appeared therein, and each case was still pending. It was agreed, that no declaration was contained in either writ, that declarations were filed in the clerk's office on the return day of each writ, that due service was made upon

her in each case, and that the petitioner made no demand for a copy of the declarations in either case. Thereupon the respondent bank filed a petition in insolvency against the petitioner, signed in its name by its president, C. O. Billings, on the ground that she had become insolvent by her failure thus to dissolve the attachments, and she was duly adjudged an insolvent debtor thereon. The petition did not allege that the writs in the above described actions were duly served upon the petitioner. The affidavit appended to this petition in insolvency, signed by a justice of the peace, was as follows: "Commonwealth of Massachusetts. Suffolk ss. May 23, 1889. Personally appeared the above named Charles O. Billings, and made oath that the allegations contained in the foregoing petition are true, except such as are stated to be on information and belief; and as to such allegations that he believes them to be true. Before me."

At the hearing, the petitioner, for the purpose of showing that the alleged instruments were invalid, called her husband as a witness, and the respondent objected to his testimony. The judge, without passing upon the admissibility of this testimony, admitted it, so that it might be reported to the full court in case of an appeal by either party, but ruled that, even if such testimony were admissible and fully considered by him, the bill should be dismissed. The evidence offered tended to show that the petitioner's husband handed to her the blank forms of the instruments held by the respondent bank and the National Bank of the Republic, bearing the printed words and figures only, as above stated, and asked her to write her name upon the back of each; that she did so, and handed them back to him; that she never received directly any consideration for either instrument; that thereupon he put them into his pocket, and she never saw them again; that a few days afterwards, in her absence, he filled up the blanks, and signed and indorsed them; that he then took them to the respondent bank and to the National Bank of the Republic, by which respectively they were discounted; that each bank gave full value for the note or notes discounted by each, and was a *bona fide* holder for value; that the proceeds of the notes were largely used by him for the payment of the family expenses; and that the petitioner, when she put her name on the back of the instruments, and on other similar notes, "had

known for about two years that these notes were to be filled up and used" by her husband.

The judge ordered the bill to be dismissed; and the petitioner appealed to the full court.

*J. D. Ball,* for the petitioner.

*L. L. Scaife & B. G. Davis,* for the respondents.

DEVENS, J.   The petition in the case at bar is addressed to the supervisory jurisdiction of this court of all cases arising under the insolvent law, which, " except when special provision is otherwise made, may, upon the bill, petition, or other proper process of any party aggrieved, hear and determine the case as a court of equity."   Pub. Sts. c. 157, § 15.   While the language used is broad enough to include all questions of fact as well as of law, and while, in the exercise of this jurisdiction, the court is not limited to the evidence which was before the Court of Insolvency, but may hear and pass upon other evidence, the application of the party invoking the interference of this court does not bring before it the whole case, but only those points in which he alleges himself to have been aggrieved.   *Lancaster* v. *Choate,* 5 Allen, 530.

The first complaint of the petitioner is, that the alleged notes held by the creditors, the Globe National Bank and the National Bank of the Republic, were not valid claims against her.   At the trial, before a single judge of this court, in order to prove the invalidity of these notes, she offered the testimony of George H. Binney, her husband, which was objected to by the respondents.   While the evidence was received, in order that the case might be fully reported, should either party desire to appeal, the single judge did not find it necessary to pass upon the admissibility of this testimony, as he was of opinion that, if admissible and fully considered, the bill should still be dismissed. Without discussing the admissibility of this testimony, it showed that the petitioner indorsed these so called notes, held by the two banks, on printed blank forms of notes, which contained nothing but the printed words, which appear by the exhibits produced; that she did so at the request of her husband, who took them, and afterwards (not in her presence) filled up the blanks, and negotiated them for value to the two banks, which discounted them, and were *bona fide* holders thereof; that she

received directly no consideration for them, although the proceeds were used to some extent for the support of herself and family; and that she never saw them after she gave them to her husband. It further appeared, by the testimony of her husband, that she knew "that these notes were to be filled up and used" by him.

Upon a state of facts similar to this, an indorsee who receives such a note for value before maturity, or who discounts it for value after it has been filled up by one to whom it has been intrusted with authority thus to fill up and use it, may ordinarily hold the indorser responsible. Such an instrument, intrusted to the custody of another for use, would make, as between the indorser and an innocent third party, that other the agent of the indorser, nor can it be important whether the filling up is done in the presence of the indorser or subsequently, if then done by his authority. In either case it is his own act, although done by the hand of another, and he is bound by it. *Androscoggin Bank* v. *Kimball*, 10 Cush. 373. Nor is the liability of the petitioner affected by the fact that she is the wife of the signer of the note, who filled the blanks therein and caused the same to be discounted, receiving the proceeds thereof. While a promissory note between husband and wife is void between the original parties, an indorser, when sued upon a contract between him and his indorsee, is not at liberty to deny the validity of the original note, or the capacity of the maker, for the purpose of defeating his or her own liability. The consideration moving from the party who takes the note with the signatures of the maker and of the indorser is sufficient to support the promise of the latter, and the fact that the indorsement is for the accommodation of the maker affords no defence to the indorser. *Kenworthy* v. *Sawyer*, 125 Mass. 28, and cases cited.

The authority given to a married woman to make contracts as if she were sole, not only as to her separate property, but as to property of every kind, with any one except her husband, (Pub. Sts. c. 147, § 2,) authorizes her to act, when she sees fit to do so, by an agent. The husband may be authorized to act for her as agent, as well as any other person, and within the authority thus given him his acts would bind her as if she acted in person. *Coolidge* v. *Smith*, 129 Mass. 554. *Arnold* v. *Spurr*,

130 Mass. 347.   *Wheaton* v. *Trimble,* 145 Mass. 345.   *Frank* v. *Lilienfeld,* 33 Grat. 377.

The contention of the petitioner that these blanks were a gift to the husband, or that her signature was a gift to him, which was a nullity, cannot be maintained.  So far as the blanks are to be treated as mere pieces of paper, it would seem that they were the property of the husband, according to the evidence.  It is in the power of the wife also, if she chooses, to give her signature for the benefit of her husband.  It has been held, under the St. of 1874, c. 184, that a promissory note made by a married woman jointly with her husband, the only consideration being a debt due from him to the payee, would bind her.  *Major* v. *Holmes,* 124 Mass. 108.  In *Roby* v. *Phelon,* 118 Mass. 541, it was held that, the husband and wife being incompetent to contract with each other, a note made by her to him was, as between them, wholly void, and his indorsement of it to the plaintiffs could not make it binding upon her, although it might estop him to deny its validity in an action by the indorsees against him.  In the case at bar, the wife is in the position of indorser, the note has been transferred to the holders with her consent for value, and she cannot deny its validity as against them.  Even assuming, then, but without intending so to decide, that the evidence offered by the petitioner was admissible, proof that the notes when indorsed by the petitioner contained unfilled blanks would not, under the other circumstances proved, invalidate them in the hands of the banks.

When the original insolvent law was passed, rendering a person whose goods or estate were attached liable in a certain class of cases to be proceeded against in insolvency, if no bond to dissolve the attachment was given, a married woman could not execute a bond or make a contract, and it may well be that she was not liable to be proceeded against in insolvency if an attachment of her property was made, and not dissolved.  St. 1838, c. 163, § 19.  It is urged by the petitioner, that the provisions of the Public Statutes, so far as they are the same as pre-existing laws, are to be construed as a continuation thereof, and not as a new enactment ; that no act has ever been passed in terms making a married woman liable to be adjudged an insolvent debtor ; and that the legislation giving her power to

make contracts, except with her husband, as if sole, cannot be construed as subjecting her to the provisions and penalties of the insolvent law.   But the provisions of the insolvent law are intended largely, perhaps primarily, for the benefit of insolvent debtors, although they are accompanied by provisions, in some cases enforced by penalties, which shall compel a complete surrender of property in order to its equal distribution among creditors.   There is certainly no hardship in holding that, when married women have attained all the privileges supposed to attend the right to make contracts freely, they should accept the responsibilities which accompany these rights.

The Pub. Sts. c. 157, § 112, which provide that, "if a person arrested on mesne process in a civil action, . . . founded upon a demand in its nature provable against the estate of an insolvent debtor, has not given bail on or before the return day, . . . or if a person whose goods or estate are attached on mesne process, in such action founded upon such contract, has not, before the return day of such process, dissolved the attachment in the manner provided by law," such person may be proceeded against in insolvency, do not *eo nomine* mention a married woman.   She is, however, included within the word "person," and it is not important, according to our rule for the construction of statutes, that the pronouns "he" and "himself" are used in connection with it in other parts of the section.   Pub. Sts. c. 3, § 3.   An examination of other statutes will show that this word includes *prima facie* married women as well as single.   Thus the Pub. Sts. c. 162, §§ 1, 2, relating to the arrest of debtors, when taken in connection with § 3, show that by the word "person" married women would have been deemed to be included, but for their exception therefrom.   Again, the fact that married women may become insolvent debtors is clearly recognized in the same chapter.   Provision is there made (§§ 6–16) for the enforcement of judgments against female debtors, whether "unmarried or married," and § 11 provides for the proceedings which shall be taken if such judgment debtor "becomes an insolvent debtor under the laws of this Commonwealth."   The argument, that she could not dissolve the attachment of her property by giving a bond, has now ceased to exist, as she is entirely free to make such a contract.   By our law, a married woman is *sui*

*juris* as to her own property, except as to dealings with her husband; otherwise she is put on the same footing as if she were a feme sole; her common law disabilities as to holding and dealing with her property are removed. *Pacific National Bank* v. *Windram,* 133 Mass. 175. *Jackson* v. *Von Zedlitz,* 136 Mass. 342.

We cannot agree that she is not to be treated here as a person fully *sui juris,* because, as suggested by the petitioner, she may have property without the State which she cannot by the laws of other States fully control, as she may that which is within this Commonwealth. Nor do we deem it necessary now to discuss how far, if at all, a wife might be liable criminally to any penalties of the insolvent law, if committed in the presence and under the presumed coercion of the husband. Pub. Sts. c. 157, § 119. Being included within the general word of description used in the insolvent law, and there being now no reason arising from incapacity to contract or other cause why the law should not be applied to her, she is brought within its terms, subjected to its liabilities, and entitled to its benefits. Having failed to dissolve an attachment of her property by neglecting, under the circumstances stated in the statute, to give bond, she was liable to be proceeded against under the insolvent law.

The declarations in the actions brought respectively by the Globe National Bank and the National Bank of the Republic were not inserted in the writs upon which the attachments were made, nor were they filed in court until the return day. No demand was ever made on either bank for a copy of the declaration. It is the contention of the petitioner that she could not be in default, or liable to be proceeded against, for not dissolving attachments, when there was nothing to show, until after the time to dissolve them had expired, that her property was attached in an action "founded upon a demand in its nature provable against the estate of an insolvent debtor." In order that a valid attachment may be made, the writ need not contain a declaration, nor any description of the cause of action on which it is intended to declare, other than the name of the form thereof, and the declaration may be filed in the clerk's office on or before the day on which the writ is returnable, unless an arrest of the person is made. Pub. Sts. c. 167, §§ 7, 8. It was not

necessary, therefore, to the validity of the attachment, that a declaration should be inserted in the writ, or filed before the return day. It was sufficient to show to the court, as it was shown, that the attachment was founded upon a demand in its nature provable against the estate of an insolvent debtor. The Pub. Sts. c. 167, § 8, require that where an attachment of property is made upon a writ, and the declaration is not inserted therein, " a copy thereof shall be furnished to the defendant or his attorney within three days after he has demanded the same in writing of the plaintiff or his attorney." Of this provision the petitioner did not seek to avail herself. We have no occasion to consider what would have been the effect had such a demand been made and refused.

The petitioner further urges that the petition to the Court of Insolvency fails to aver that a service of the writs had been made upon her, and also that the petition of the Globe National Bank was not sufficiently verified by oath. It may be questioned whether defects like these, if they existed, are to be remedied by a petition like that in the case at bar, intended to secure substantial justice, through the supervisory jurisdiction of this court. It is, however, enough to say that the allegation that the suits were duly entered in court, and are still pending, implies that the writs were served on the petitioner; that such service was actually made appears by the agreement of counsel. As to the jurat upon the petition of the Globe National Bank, it was in the form which has heretofore been held sufficient. *O'Neil* v. *Glover*, 5 Gray, 144. *American Carpet Lining Co.* v. *Chipman*, 146 Mass. 385.

*Bill dismissed.*