ADOLPH VOSS vs. FREDERICK SYLVESTER.

Essex.    June 21, 1909. — September 21, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Practice, Civil,* Abatement, Exceptions.  *Abatement.  Husband and Wife.  Landlord and Tenant.*

Under R. L. c. 173, §§ 76, 96, 106, the decision of a trial judge upon questions both of law and of fact raised by a plea in abatement was final. St. 1906, c. 342, which gave the right to allege exceptions upon questions raised by a plea in abatement, provided in § 4 that it should not affect cases pending before the courts at the date of its enactment, of which the present case was one.

There can be no partnership between a man and his wife, and the husband cannot bind his wife by a partnership signature to an instrument in writing, although all the parties understood that she was bound by it and intended her to be so.

If a married man named F. S., who does business on his own account under the name F. S. and Company, signs in that name a lease which purports to be one from him and his wife as copartners under the name of S. and Company, he binds himself alone.

In an action on a lease in writing for rent of a boiler shop, it appeared that the boiler shop was a one story wooden structure adjoining a three story tenement building also belonging to the plaintiff, and that on the roof of the boiler shop there was a platform for the use of the plaintiff's tenants occupying the tenements on the second and third floors of the building.  The lease provided that the defendant should "quit and deliver up the premises to the lessor . . . at the end of the term, in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as the same now are, or may be put into by the said lessor."  There was no provision that the plaintiff should make repairs.  The defendant asked the presiding judge to instruct the jury that if they found that the tenants of the building had rights of passage over and the general use of the platform on the roof of the boiler shop in common with each other and the landlord, and the landlord retained control of the platform, he was bound to keep it in repair and was responsible for any failure to do so.  The judge refused to instruct the jury as requested and instructed them as follows: "The plaintiff had a right to allow the

other tenants to use this platform, and if in their use of it in a reasonable way the defendant's occupancy of the shop was affected, the plaintiff would not be liable or chargeable in this action, although the premises occupied as a boiler shop were less beneficial to him, unless the plaintiff either authorized or consented to some act on the part of his tenants which rendered this boiler shop unfit for occupancy." *Held,* that the ruling requested was refused rightly, and that there was no error in the instructions given.

In an action on a lease in writing for rent of a boiler shop, it appeared that the boiler shop was a one story wooden structure adjoining a three story tenement building also belonging to the plaintiff, and that on the roof of the boiler shop there was a platform for the use of the plaintiff's tenants occupying the tenements on the second and third floors of the building. The lease provided that the defendant should "quit and deliver up the premises to the lessor . . . at the end of the term, in as good order and condition, reasonable use and wearing thereof, fire and unavoidable casualties excepted, as the same now are, or may be put into by the said lessor." There was no provision that the plaintiff should make repairs. The defendant set up the defense of eviction by reason of leakage of the roof caused by the use of the platform by the plaintiff's other tenants. The jury returned a verdict for the defendant under instructions upon which they must have found, on evidence warranting such a finding, that the plaintiff did not authorize or consent to such a use of the platform as rendered the boiler shop unfit for occupany. *Held,* that the plaintiff was under no obligation to the defendant to keep the platform in repair, that mere failure or neglect to do so, whereby the boiler shop became unfit for occupancy, would not justify the defendant in abandoning the leased premises and refusing to pay rent, and that upon the finding of the jury there was no eviction.

In an action on a lease in writing for rent of a boiler shop, it appeared that the boiler shop was a one story wooden structure adjoining a three story tenement building also belonging to the plaintiff, and that on the roof of the boiler shop there was a platform for the use of the plaintiff's tenants occupying the tenements on the second and third floors of the building. The defendant set up the defense of eviction by reason of leakage of the roof caused by the use of the platform by the plaintiff's other tenants. It did not appear that the defendant when he took the lease made any objection to the use of the platform by the tenants or that the plaintiff made any promise or representation of change or improvement in reference to such use. The presiding judge instructed the jury as follows: " If the leaks of which the defendant complains were caused by the use which the tenants made of the platform and the defendant knew of the condition of the platform and of the structures thereon, and if the tenants made such use of the platform before the lease was accepted by him, then the plaintiff has no cause of complaint, and there was no eviction." The defendant excepted to this instruction. *Held,* that the instruction was correct.

CONTRACT, for rent of a blacksmith's shop and boiler shop upon Wharf Street in Gloucester, the second count, which was the only one material, being upon a lease in writing, of which a copy was annexed to the declaration and bore the signatures under seal of the plaintiff and of "Frederick Sylvester & Co." Writ dated March 17, 1903.

The defendant filed an answer in abatement alleging that, if he was indebted to the plaintiff he was indebted jointly with one Mary Sylvester, who ought to have been made a party. He filed a further answer, without waiving his answer in abatement, containing a general denial, an allegation that the lease was void because no such copartnership as Frederick Sylvester and Company existed, an allegation of payment, and an allegation that the plaintiff by his use of the roof of the premises had rendered them unfit for occupancy and had evicted the defendant from them.

In the Superior Court the case was tried before *Crosby,* J. He overruled the plea in abatement, and refused to give certain instructions requested by the defendant, giving other instructions instead. His rulings so far as material are stated in the opinion. The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

The case was submitted on briefs.

*F. H. Tarr,* for the defendant.

*L. S. Simonds,* for the plaintiff.

MORTON, J. This is an action of contract for rent alleged to be due from the defendant to the plaintiff under and by virtue of a written lease from the plaintiff to the defendant of certain premises in Gloucester. The jury returned a verdict for the plaintiff for the full amount claimed, and the case is here on the defendant's exceptions. The exceptions relate wholly to the second count in the declaration which was upon the written lease.

The lease purported to be a lease from the plaintiff to " Frederick Sylvester and Mary Sylvester copartners of said Gloucester under the name of Sylvester & Co. of said Gloucester." It was duly executed by the plaintiff and was signed by the defendant with the name of " Frederick Sylvester & Co." It was not signed by Mary Sylvester who was the plaintiff's wife. The defendant filed a plea in abatement setting up the non-joinder of Mary Sylvester and also made answer that the lease was void because there was no such partnership as Frederick Sylvester and Company, and he was not liable thereon, and that by the plaintiff's acts the demised premises had been rendered unfit for occupancy and he had been evicted from the same. In re-

gard to the plea in abatement certain facts were agreed to by the parties in open court from which it appeared that the plaintiff insisted that the defendant's wife should become a party to the lease, and that thereupon the words "and Mary Sylvester copartners of said Gloucester under the name of Sylvester & Co." were written into the lease, and the defendant took it home and discussed the matter with his wife and brought it back and executed it by signing the name of "Frederick Sylvester & Co." opposite the second seal; — the plaintiff at the same time executing it by signing his name opposite the first seal. The defendant had been doing business for a number of years before the execution of the lease under the name of Frederick Sylvester and Company, and continued to do business under that name after the execution of the lease. There was no one in partnership with him during any of the time when he was so doing business. There was no occupancy of the premises under the lease or otherwise by the defendant's wife. Upon these and other facts agreed to by the parties the defendant asked the presiding judge to make various rulings relating to the plea in abatement. The judge refused to make the rulings thus requested, and overruled the plea in abatement. The defendant duly excepted.

We do not find it necessary to consider the rulings thus asked for except so far as, if at all, they involve questions relating to the merits. Under R. L. c. 173, §§ 76, 96, 106, the decision of a single justice upon questions raised by a plea in abatement was final. This was so in regard to questions both of law and of fact. *Guild* v. *Bonnemort*, 156 Mass. 522. By St. 1906, c. 342, exceptions may now be alleged to rulings upon questions arising upon pleas in abatement. But the concluding section of that statute expressly provides that, "This act shall not affect cases pending before the courts at the date of its enactment." St. 1906, c. 342, § 4. The effect of this provision is to render the act inapplicable to pending cases and to leave such cases to be governed by the law in force at the time of the passage of that act. If it were not for this saving clause it would seem clear that the act, relating as it does to matters of procedure, would apply to pending cases. See *Stocker* v. *Foster*, 178 Mass. 591; *Kimbray* v. *Draper*, [1868] 3 Q. B. 160;

*Donner* v. *Palmer*, 23 Cal. 40 ; *McNamara* v. *Minnesota Central Railroad*, 12 Minn. 388; Sedg. Stat. & Const. Law, (2d ed.) 161, note a. *Contra, Uwchlan Township Road*, 30 Penn. St. 156. *Boston & Maine Railroad* v. *Cilley*, 44 N. H. 578.

A husband and wife cannot contract with each other, and therefore a partnership between them would be void. R. L. c. 153, § 2. *Bowker* v. *Bradford*, 140 Mass. 521. But although they cannot contract with each other they may contract with third parties and will be bound by such contract if properly entered into. *Reiman* v. *Hamilton*, 111 Mass. 245. *Parker* v. *Kane*, 4 Allen, 346. There being no partnership between himself and his wife the defendant could not bind her by a partnership signature even though all parties so understood and intended. The result was that he bound himself and no one else. *Taft* v. *Church*, 162 Mass. 527. *Bowker* v. *Bradford*, 140 Mass. 521. *Wiggin* v. *Lewis*, 12 Cush. 486. It is to be noticed that the signature which he affixed to the lease was not, strictly speaking, the name under which he and his wife were described as partners in the body of the lease, but was the name under which he had been doing and continued to do business on his own account. There was, therefore, nothing in the form of the signature inconsistent with his being the sole lessee, and as such liable for the rent.

The premises that were leased consisted of a blacksmith shop and a boiler shop so called. The blacksmith shop was on the first floor of a three story wooden building in which were four tenements on the second and third floors. The boiler shop was a one story wooden structure, with a board roof covered with tarred paper. It was built by the plaintiff in 1898 and a platform was constructed upon the roof for the use of the tenants occupying the tenements over the blacksmith shop. On this platform the plaintiff built three bins for the use of the tenants, and two water closets and a sink with a pipe leading into the vault of the closets. There was a stairway leading from the street to this platform and furnishing a back entrance to the tenements. The defendant occupied the boiler shop from 1898 to the date of the lease in June, 1900, as a tenant at will.

The defendant introduced evidence tending to show that the occupants of the tenements used the platform for chopping

wood, washing clothes, and as a playground for their children, and that during the period that he occupied under the lease, some of the tenants emptied wash water on the platform and made unclean uses of the water closets and sink and that the platform got so out of repair that parts of the plank forming it broke and rotted away and in consequence thereof and of the use made of it by the tenants foul water dropped through the roof upon himself and his employees and upon the machinery and materials, and that at times large quantities of rain water came through also.    He also introduced evidence tending to show that he had repeatedly called the attention of the plaintiff to these matters and that the plaintiff had attempted to stop the leaks but had not succeeded.   He contended that in consequence of this condition of things the boiler shop had become untenantable and that he had been evicted therefrom.    The plaintiff introduced evidence tending to show that the use that was made of the platform by the tenants while the defendant was occupying under his lease was not different from the use which had been made by them of it before, and that the defendant's evidence as to the leakage was greatly exaggerated.   It appeared that the defendant had purchased in July, 1902, a parcel of land in the vicinity and in November, 1902, had removed thereto, and the plaintiff contended that the defendant did not vacate the leased premises by reason of the leakage complained of but for the purpose of occupying his own shop.

The defendant asked the judge to instruct the jury that if they found that the tenants of the block had rights of passage over and the general use of the platform on the roof of the boiler house in common with each other and the landlord, and the landlord retained control of the same, then the landlord was bound to keep the platform in repair, and was responsible to the defendant for any failure to do so.    The judge refused to instruct the jury as thus requested and instructed them as follows : " The plaintiff had a right to allow the other tenants to use this platform, and if in their use of it in a reasonable way the defendant's occupancy of the shop was affected, the plaintiff would not be liable or chargeable in this action, although the premises occupied as a boiler shop were less beneficial to him, unless the plaintiff either authorized or consented to some act on

the part of his tenants which rendered this boiler shop unfit for
occupancy." We think that the ruling which was requested
was rightly refused and that there was no error in the instruc-
tions which were thus given.

The lease provided that the defendant should " quit and
deliver up the premises to the lessor, or his attorney, peaceably
and quietly, at the end of the term, in as good order and con-
dition, reasonable. use and wearing thereof, fire and other un-
avoidable casualties excepted, as the same now are, or may be
put into by the said lessor." There was no provision that the
plaintiff should make repairs, and the defendant concedes that
the plaintiff was under no obligation to keep the roof of the
boiler shop in repair. If any one was bound to keep it in repair
it would seem that the duty rested on the defendant. The de-
fendant contends, in effect, that the plaintiff was bound to keep
the platform over the boiler shop in repair, and that the use
which was made of it by the other tenants constituted a nuisance
rendering the boiler shop unfit for occupancy for which the
plaintiff was responsible and which the defendant was entitled
to treat as an eviction and to vacate the premises accordingly. It
is to be noticed that no ruling was asked for by the defendant
as to what would or would not constitute an eviction, and
it is open to doubt whether any question relating to eviction
is properly before us. But the defense of eviction was set up,
as already observed, in the answer and the case seems to have
been tried in the Superior Court and has been argued here as if
that was one of the questions in issue and we proceed to deal
with the case accordingly.

The plaintiff was under no obligation to the defendant to keep
the platform in repair. *Dalton* v. *Gibson*, 192 Mass. 1, 5. If
he owed a duty to any one to keep it in repair, it was to the
tenants who used it in common and to others who used it by his
express or implied invitation (*Miles* v. *Janvrin*, 200 Mass. 514);
but he had no right to do anything or consent to the doing of
anything upon the platform which would constitute a nuisance
and render the boiler shop unfit for occupancy, and if he did, the
tenant could at his election treat it as an eviction and vacate
the premises. Mere default or neglect, however, on the part of
the plaintiff to keep the platform in repair, whereby the boiler

shop became unfit for occupancy, would not justify the defend-
ant in abandoning the leased premises and refusing to pay rent.
The plaintiff was, as already observed, under no legal obligation
to the defendant to repair the platform, and his failure to do so
could have no greater effect in regard to the defendant's ten-
ancy than his failure or neglect to repair the leased premises
themselves would have, whatever his motive in refusing or
neglecting to repair might be, or whatever the consequences so
far as the defendant was concerned might be.    " To constitute
an eviction . . . there must be either an actual expulsion of
the tenant, or some act of a permanent character, done by the
landlord with the intention and effect of depriving the tenant of
the enjoyment of the demised premises or some part of it, to
which he yields, abandoning the possession within a reasonable
time." *Bartlett* v. *Farrington,* 120 Mass. 284. *McCall* v. *New
York Ins. Co.* 201 Mass. 223. " The intent with which the act is
done may be an actual intent accompanying and characterizing
the act, or it may be inferred from the act itself." *Skally* v. *Shute,*
132 Mass. 367. No case has gone so far as to hold that neglect
to repair when the landlord is under no obligation to repair will
constitute an eviction. Under the instructions the jury must
have found, as there was evidence warranting them in doing,
that the plaintiff did not authorize or consent to such a use of
the platform as rendered the boiler shop unfit for occupancy and
that there was therefore no eviction.

The defendant complains of the instruction that, " If the
leaks of which the defendant complains were caused by the use
which the tenants made of the platform and the defendant knew
of the condition of the platform and of the structures thereon, and
if the tenants made such use of the platform before the lease
was accepted by him, then the defendant has no cause of com-
plaint, and there was no eviction." If the defendant knew of
the condition of the platform and the use that was made of it by
the tenants when he took the lease, and he made no objection
thereto and the plaintiff made no promise or representation of
change or improvement in reference thereto (and it is not con-
tended that he did) we do not see how the defendant has any
just ground for complaint by reason of such use after he took the
lease, or how any consent or authority in regard to such use on

the part of the plaintiff could be found to have been given by him, as was said in substance in *De Witt* v. *Pierson,* 112 Mass. 8, under somewhat similar circumstances, with intent to evict the defendant. We think that the instructions thus given were correct.

*Exceptions overruled.*