ARNAULT B. EDGERLY & another *vs.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES & others.

Suffolk.    May 18, 1933. — June 28, 1934.

Present: PIERCE, WAIT, FIELD, & LUMMUS, JJ.

*Partnership.    Uniform Partnership Act.    Husband and Wife.    Married Woman.    Contract,* Validity, Partnership, For joint venture.    *Agency.*

Averments, in a bill in equity against a married woman to establish a debt owed by her to the plaintiff by reason of a transaction by him with a certain stock brokerage concern in which she was alleged to be interested, were that she was engaged in the business with her husband "as a joint venture . . . for their mutual profit" and that in the conduct of the business each "acted as agent for the other and each was duly authorized to contract for and bind the other by any and all contracts, agreements or undertakings within the scope of a general stock brokerage business"; that in his transaction the plaintiff had paid money "to either or both" the woman "and/or" her husband, and 'had delivered securities "at the request of" the woman "and/or" her husband, "their agents or servants"; and that the husband had died.  A demurrer to the bill was sustained.  *Held,* that

(1) There were no averments in the bill of acts or conduct by the woman, or by her husband as her agent, or of the woman and her husband jointly, which would subject her severally or jointly with her husband to liability apart from the alleged "joint venture";

(2) A woman as a matter of law cannot have a business partnership relation with her husband, and therefore, on the averments of the bill, the woman did not become liable to the plaintiff by reason of any acts or conduct in pursuance of the "joint venture" considered as a partnership;

(3) Even if the averments in the bill set forth a joint venture rather than a partnership between the woman and her husband, the plaintiff stood in no better position: the incapacity of a married woman to contract with her husband extends to a contract for a joint venture;

(4) The demurrer rightly was sustained.

There is nothing in the uniform partnership act, G. L. (Ter. Ed.) c. 108A, which changes the preëxisting law with respect to the incapacity of a married woman to make a contract of partnership with her husband.

BILL IN EQUITY, filed in the Superior Court on January 18, 1933.

The bill and a demurrer thereto are described in the opinion. By order of *Whiting*, J., an interlocutory decree sustaining the demurrer was entered and, the plaintiff appealing, the suit was reported for determination by this court of the propriety of such ruling.

*J. B. Wolbarsht*, (*W. L. Berger* with him,) for the plaintiffs.

*S. M. Salny*, (*E. W. Baker* with him,) for the defendants.

FIELD, J. This bill in equity, so far as the questions for our determination are concerned, is a bill to reach and apply to the payment of an alleged debt of the defendant Haidee S. Crowell, hereinafter referred to as the defendant, certain alleged property of said defendant. G. L. (Ter. Ed.) c. 214, § 3 (7). The allegations in regard to the debt are as follows: "1. The defendant Haidee S. Crowell for some years prior to the bringing of this bill was engaged in the general stock brokerage business together with her late husband H. Hollon Crowell under the name and style of 'H. Hollon Crowell' (hereinafter distinguished from H. Hollon Crowell, individually, by being described in quotes as follows: 'H. Hollon Crowell'). 2. Said business was conducted as a joint venture by the defendant Haidee S. Crowell and H. Hollon Crowell for their mutual profit, and each of said persons in the conduct and transaction of the said business acted as agent for the other and each was duly authorized to contract for and bind the other by any and all contracts, agreements or undertakings within the scope of a general stock brokerage business. 3. The plaintiffs were clients or customers of the aforesaid business of 'H. Hollon Crowell' and as such have paid varying and

substantial sums to either or both the said defendant Haidee S. Crowell and/or H. Hollon Crowell for the express purpose and with express directions to buy or sell, as the case may have been, stocks, bonds or other securities. 4. That at divers times and for the purpose of providing security or margin to cover the accounts carried by the plaintiffs with the said 'H. Hollon Crowell' and at the request of Haidee S. Crowell and/or H. Hollon Crowell, their agents or servants, your plaintiffs have delivered securities of various descriptions to cover their respective accounts with 'H. Hollon Crowell.'" The defendant demurred "to so much of the bill of complaint as sets forth or alleges that she was engaged in a general stock brokerage business, together with her late husband, H. Hollon Crowell, which business was conducted as a joint venture for their mutual profit, and assigns as causes therefor the following: 1. That said allegations do not set forth a legal cause of action against this . . . [defendant]. 2. That there is no equity in so much of the bill of complaint as is based on these allega-tions." The trial judge made an order for a decree sustaining the demurrer on the first ground thereof, and thereafter a decree that "the demurrer be and hereby is sustained on the first ground set forth therein, and that so much of the bill of complaint as seeks to establish direct liability against the defendant, Haidee S. Crowell, be and hereby is dismissed." The plaintiffs appealed from the order and from the decree and the judge certified that his "ruling, order and decree on the demurrer . . . so affects the merits of the controversy that the matter should, before further proceedings, be determined by the full bench of the Supreme Judicial Court," and reported the questions raised thereby for that purpose.

The demurrer was sustained rightly. The bill was brought not to subject partnership property to the debts of partnership creditors, but, rather, to establish a debt of the defendant personally, and to reach and apply her property to the payment thereof. But the facts alleged do not show that she is personally indebted to the plaintiff.

There are no allegations in the bill of acts or conduct of the

defendant, or of her husband as her agent, as in *Reiman* v. *Hamilton*, 111 Mass. 245, or of the defendant and her husband jointly, as in *Parker* v. *Kane*, 4 Allen, 346, which would subject her severally or jointly with her husband to liability apart from the alleged "joint venture." The allegations of payment of money "to either or both the said defendant Haidee S. Crowell and/or H. Hollon Crowell" or of delivery of securities "at the request of Haidee S. Crowell and/or H. Hollon Crowell, their agents or servants," are not allegations of such acts or conduct. The allegation with regard to the defendant and her husband that "each of said persons . . . acted as agent for the other and each was duly authorized to contract for and bind the other by any and all contracts, agreements or undertakings within the scope of a general stock brokerage business" is limited to agency "in the conduct and transaction" of the business "conducted as a joint venture," and do not state that the defendant's husband was her agent in the conduct and transaction of business independent of the alleged "joint venture."

The defendant did not become liable to the plaintiff by reason of any acts or conduct in pursuance of the "joint venture" considered as a partnership. Since at the common law and, after St. 1874, c. 184, § 1, by statute (see now G. L. c. 209, § 2), a married woman cannot contract with her husband, the defendant, before the uniform partnership act was adopted in this Commonwealth (St. 1922, c. 486, see now G. L. [Ter. Ed.] c. 108A), could not be a partner with her husband or become personally liable to third persons by reason solely of transactions carried on by an attempted partnership between her and her husband. This was decided in *Lord* v. *Parker*, 3 Allen, 127, before the enactment of St. 1874, c. 184 (see also *Plumer* v. *Lord*, 7 Allen, 481; *Bowker* v. *Bradford*, 140 Mass. 521; *Voss* v. *Sylvester*, 203 Mass. 233, 237); and later statutory changes enlarging the capacity of a married woman to deal with property (see, for example, St. 1912, c. 304, and St. 1920, c. 478 [now G. L. (Ter. Ed.) c. 209, § 3]), but continuing her incapacity to contract with her husband, though affecting some of the grounds stated for the decision, do not call for a departure from the con-

clusion reached in that case. Nor have there been any such changes in the rights of a married woman to sue her husband in equity, or in the status generally of married women before the law, as would justify such a departure. See *Frankel* v. *Frankel,* 173 Mass. 214, 215, and cases cited. The decision in *Suau* v. *Caffe,* 122 N. Y. 308, relied on by the plaintiff, contrary to our decisions, and the reasons upon which that decision was based do not persuade us that our cases should be overruled. And it does not follow from the fact that a married woman by proper means can constitute her husband her agent that she can do so by means of an attempted but invalid contract of partnership, much less that she can constitute a nonexistent partnership her agent. In the absence of independent grounds of agency the agency falls with the contract.

There is nothing in the uniform partnership statute as adopted in this Commonwealth (St. 1922, c. 486, see now G. L. [Ter. Ed.] c. 108A), which changed the previously existing law with respect to the incapacity of a married woman to make a contract of partnership with her husband. That statute provides in part that a "partnership is an association of two or more persons." G. L. (Ter. Ed.) c. 108A, § 6 (1). But it neither expressly nor impliedly confers capacity to make such a contract upon an individual who, by the law governing capacity, is incapable, because of infancy, coverture, or any other reason, from making a contract. The statute does not purport to deal with capacity to contract and the provision therein that it "shall be so interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it" (G. L. [Ter. Ed.] c. 108A, § 4 [4]) does not require uniformity in law outside its scope and affecting it only incidentally. Though apparently neither the word "persons" nor anything else in the uniform partnership statute by its own force precludes a married woman from making a contract of partnership with her husband, if this was permitted by other provisions of law, that statute must be applied in harmony with the existing provisions of law which render her incapable of so doing. See

*Opinion of the Justices*, 237 Mass. 591, 594; *Ames* v. *Chandler*, 265 Mass. 428, 430. Compare *Binney* v. *Globe National Bank*, 150 Mass. 574, 580.

We need not decide whether a married woman might become liable for the debts of a purported partnership under the provision of the uniform partnership statute imposing liability on a person who "represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners." G. L. (Ter. Ed.) c. 108A, § 16. There are no allegations in the bill that the defendant has so represented herself or consented to such representation. The facts alleged do not show that the business was represented to be anything other than the business of H. Hollon Crowell.

Even if, as we do not decide, the bill alleges a joint adventure of the defendant and her husband, rather than a partnership between them, the plaintiff stands in no better position. A joint adventure in the conduct of business transactions resembles in many respects a partnership. See *Rosenblum* v. *Springfield Produce Brokerage Co.* 243 Mass. 111; *Beatty* v. *Ammidon*, 260 Mass. 566, 575–576. The relation of joint adventurers, like a partnership, is created by a contract express or implied and, without such a contract, no liability for debts arises out of the transactions, unless — as is not the case with respect to the defendant on the allegations of this bill — there is some independent ground of liability. We perceive no adequate reason for holding that the incapacity of a married woman to contract with her husband, which applies to a contract of partnership and is of wide application (compare *National Granite Bank* v. *Tyndale*, 176 Mass. 547, 550–551, *Humphrey's Case*, 227 Mass. 166, *Gahm* v. *Gahm*, 243 Mass. 374), should not extend to a contract for a joint adventure. The defendant, therefore, on the facts alleged, was not liable as a joint adventurer with her husband in the conduct of business under the name of "H. Hollon Crowell" for the debts of the alleged "joint venture."

*Interlocutory decree affirmed.*