Morton, J.
These are three actions of contract for rent under a written lease. The answers in all three cases consisted of a general denial and payment, and in the third case there was an additional paragraph in the answer to the effect that the action was barred by the Statute of Limitations.
The evidence tended to show that the plaintiff’s testate, one Ephraim Stone, and the defendant entered into a written indenture of lease dated October 7, 1926 demising to the defendant, for use in his business as a florist, the stores numbered 299-301 Pleasant Street in the City of Malden with basements thereunder, for a term- of three years beginning November 1, 1926; reserving rent payable at the rate of $110 a month for the first year, and $115 a mopth for the succeeding two years of the term payable in advance. The lease contained the usual covenant on the part of the lessee “to keep all and singular the said premises in such repair, order and condition as the same are in at the commencement of the term, or may be put in during the continuance thereof, damage by fire or other unavoidable casualty only excepted”. And it further provided as follows:
“Outside repairs, however to be made by lessor — ten days written notice of any leak in roof to be given by lessee to lessor.”
It further appeared in evidence that some time in November, 1927, water leaked through the top of the front *343 windows and seeped through the ceiling of the demised premises wetting a strip running along the front of said ceiling, and at times causing bits of calcimine to fall on plants thereunder. Under date of November 7, 1927 the defendant notified the plaintiff of the leak, and requested that the necessary repairs be made. The lessor responded to this letter by sending repair men who made repairs.
Two months later a large wet spot appeared in the ceiling over the window in front of the store and bits of calcimine dropped therefrom. The defendant spoke to the plaintiff from time to time with regard to this condition and orally requested that the cause thereof be remedied. On October 3, 1928 the defendant sent a letter to the plaintiff giving notice that he would quit the premises on the last day of the month, stating as the reason therefor that the plaintiff had failed to comply with his agreement to repair. In response to this notice the plaintiff sent roofers out to the locus, but no repairs were made. The defendant moved out on October 30,1928. On November 1,1928 the defendant sent a registered letter, return receipt requested to the lessor enclosing a check for $110 with the notation thereon “October rent”. This letter was returned to the defendant unopened with a notation thereon “returned to writer, refused”.
One John J. Howell, a roofer, called by the défendant, testified that the wet spots on the ceiling were due to the fact that the base flashing around the roof was too small to hold the rain.
In each case five requests for rulings were duly filed by the plaintiff, as follows:
“1. Upon all the evidence there must be a finding for the plaintiff because said evidence discloses no act or omission to act by the plaintiff which gave the defendant the right to quit the premises, or to refuse to pay rent according to his covenant.
*344 2. If the Court finds that the Lessor refused or neglected when requested to make repairs on the building which contained the premises leased by the defendant, which if made would prevent the harm suffered by the defendant, said failure is not sufficient to cause an eviction. Goldberg vs. Horan, 263 Mass. 302 at 304.
3. Even if the Court finds that the Lessor refused or neglected to repair the demised premises or adjoining buildings, and by his failure the premises became uninhabitable, or unfit for the purposes for which they were leased, the tenant had no right to quit the premises or to refuse to pay rent according to his covenant. Royce vs. Guggenheim, 106 Mass. 201, 202, 203.
4. If the Court finds that the Lessee remained in possession of the demised premises for a period of several months after the matters complained of first, became apparent to him, the Court must find that the Lessee waived his right to treat the matters complained of as an eviction justifying his refusal to pay. rent.
5. Upon all the evidence the Court cannot find that there was an eviction in the case at bar, because there was no act of a permanent character done by the Lessor or by his procurement with the intention and effect of depriving the tenant of the enjoyment of the premises demised, or a part thereof, to which he yielded and abandoned possession.”
In the third case two additional requests, relative to the Statute of Limitations, were filed by the plaintiff and allowed by the Court. Of the five requests above set forth. the Court allowed the fourth in each ease and denied the remainder without comment. In the first case the Court found for the plaintiff in the sum of $156.20. This case was for rent for the months of October, November and December, 1928. In the other two actions the Court found for the defendant.
The Court made no findings, but it is fairly to be inferred from the finding for the plaintiff for one month’s rent with interest in the first ease, and the disposition of the requests for rulings in all three cases, that the Court *345 found that the facts' constituted a constructive eviction which exonerated the defendant from the payment of rent accruing after he vacated the premises.
The report does not state that it contains all the evidence material to the questions reported. Ordinarily such an omission would require that the report be dismissed. There are exceptions in this rule, however, as stated by Mr. Chief Justice Rugg in Swistak v. Paradis, 288 Mass. 377. We think that in the instant case the rule is controlling with regard to the action of the trial court in disposing in each case of the fifth request for ruling filed by the plaintiff. That request depends upon the facts, and raises the issue as to whether, upon all the evidence, a finding is warranted , that there was a constructive eviction of the defendant. If the report had contained a statement that all the material evidence was set forth therein, it would appear doubtful if there were sufficient facts to warrant a finding of eviction. The only evidence with regard thereto was a leak which was repaired, followed, two months later, by a further leak causing bits of calcimine to drop therefrom. This was the extent of the evidence constituting eviction as set forth in the report, and would hardly warrant a finding of eviction. We say this because in Nesson v. Adams, 212 Mass. 429, there was evidence of a failure of the lessor to provide elevator service, and to light common stairs and landings adjacent thereto, and the corridors in connection therewith, and aggravated this source. of danger by creating a nuisance through allowing garbage to remain on the floor of the corridor, and failing to supply hot water. Even under these circumstances the Court says at page 431:
“Although this is an extreme case we cannot as matter of law say that there was no evidence for the jury on the issue of an eviction and of an election by the lessees to abandon the premises in consequence thereof.”
In the instant case if all the evidence were set forth in the report we think we could say as matter of law that it was *346 insufficient to warrant a finding of eviction. In the absence of the necessary statement in the report it must be dismissed with regard to the issue raised by the denial of the fifth request for ruling in each case.
Notwithstanding such omission from the report of the statement above referred to, we think that it is proper for us to consider the issue raised by the disposition of the third request for ruling in each case.
This issue is whether a lessee is relieved from his covenant to pay rent if constructively evicted from a part of the demised premises by a failure of the lessor to perform his specific covenant to repair. We think that the lessee is liable on his covenant to pay rent notwithstanding such constructive eviction. In Royce v. Guggenheim, 106 Mass. 201 at the bottom of page 202 the following language appears in the opinion:
“And the English authorities, ancient and modern, are conclusive, that even where the landlord is bound by custom or express covenant to repair, and by his failure to do so the premises become uninhabitable, or unfit for the purposes for which they were leased, the tenant has no right to quit the premises, or to refuse to pay rent according to his covenant, but his only remedy is by action for damages.”
After the language above quoted appear citations including two Mass. cases, Kramer v. Cook, 7 Gray 550, and Leavitt v. Fletcher, 10 Allen 119. In Leavitt v. Fletcher it appeared that under an indenture of lease the lessor was to make all necessary outside repairs. A roof of a building fell in in consequence of an accumulation of snow thereon. The following language appears in the opinion at page 121:
“For five months succeeding the fall of the carriage-house, the plaintiff paid to the defendant, under protest, the rent reserved in the lease; and then, ceasing to pay rent, was ejected by the defendant. The lessee’s *347 ' covenant to pay rent was not affected by the injury to the premises, nor limited by the exception of unavoidable casualty in his subsequent covenant, and is independent of the lessor’s covenant to make outside repairs. -. . . And it is not now denied that the lessee was rightly required to pay rent, and lawfully ejected for failing to pay.”
In Goldberg v. Horan, 263 Mass. 302 the above quotation from Royce v. Guggenheim, was cited with apparent approval. In view of these cases it would seem to be fairly obvious that it is the law of the Commonwealth that a failure on the part of a lessor to perform his covenant to make outside repairs, even though resulting in constructive eviction of the lessee from the whole or a part of the demised premises, will not give the tenant a right to quit the premises or refuse to pay rent according to his covenant. In consequence thereof it was error prejudicial to the rights of the plaintiff to deny her third request for ruling in each case.
In so holding we are not unmindful of dicta in several, if not many, cases which would indicate that a breach of a covenant to repair might entitle a lessee to quit the premises. For instance in Roth v. Adams, 185 Mass. 341, the Court says at page 345:
“But by the provisions of the lease the landlord entered into no contract to make any repairs that might be needed, or to remedy defects that might arise during the tenancy of the lessee, and unless such an agreement is found, the decay and dilapidation of the buildings would not be a defence to an action for the rent as it accrued.”
And in Voss v. Sylvester, 203 Mass. 233, the Court says at page 240:
“No case has gone so far as to hold that neglect to repair when the landlord is under no obligation to repair will constitute an eviction.”
However, in view of the decisive character of the decisions above referred to upon the issue now under consideration, *348 and having found no case which goes so far as to hold that an eviction will ensue from a failure to repair in breach of a covenant therefor, we feel'bound to hold, in accordance with the authorities above cited, that there was no eviction in the instant case.
The second action was for rent for January to May, 1929 inclusive; and the third action for rent for June to October, 1929 inclusive.
An order will be entered vacating the finding for the defendant in the second and third cases, and directing that judgment be entered for the plaintiff in the second case for $575 with interest, and that judgment be entered for the plaintiff in the third case for $575 with interest; and' in the first case an order will be entered vacating the finding for the plaintiff, and directing that judgment be entered for the plaintiff in the sum of $345 with interest from the date of the writ.