**H. F. RIESER'S SONS, Inc.,**

v.

Alice Walker **PARKER**, individually and as Admx. of Estate of Ralph E. Parker and Willard Ide Shattuck, Jr.

Civ. No. 53–1149.

United States District Court,
D. Massachusetts.

Nov. 24, 1954.

Supplemental Opinion Dec. 14, 1954.

Edward E. Cohen, Boston, Mass., for plaintiff.

Willard Ide Shattuck, Jr., Fitchburg, Mass., for defendant.

ALDRICH, District Judge.

This is an action of contract. The plaintiff, hereinafter called Rieser, is in the grain and feed business. It has a practice under which it supplies customers engaged in broiler raising with day-old chickens, and the feed necessary to raise them, on credit. When the birds are sold, Rieser is paid. The present case arose because the proceeds of a sale were insufficient to cover Rieser's bill.

In the summer of 1953 Rieser and one Parker entered into relations for the first time. These culminated in a written agreement to supply chickens and grain, dated August 13th. The agreement was first drafted by Rieser's attorney, but was redrawn by Parker's attorney, a Mr. Shattuck, a defendant herein. The chickens had been delivered on July 30th. They were eventually sold on October 28th and 29th. The proceeds of the sale were made payable by the buyer, in accordance with the agreement, jointly to Parker and Rieser. There were two checks. One was endorsed by both parties to a bank which had discounted notes given Rieser by Parker, and the amount credited to Parker's account. No controversy arises with relation to this. The second check, which was certified, in the amount of $3,658.10, Parker refused to endorse. It is held by stipulation pending final order of the court by Shattuck. Parker's account, after the application of the first check, and without the application of the second, was $5,455.94 in arrears.

Parker died in November, 1953 and his widow was appointed his administratrix. She has represented the estate insolvent. She is sued here in her fiduciary capacity, and also individually, because she as well as Parker signed the August 13th agreement.

■ Before coming to the questions arising under this agreement it is necessary to consider the defendants' contention that the agreement was modified on or about October 10th. This involves a disputed question of fact.

About the first of October Parker determined to sell the birds around October 7th. Under the agreement he had the exclusive decision on all questions of sale. He notified Rieser to be present to settle the account. The sale did not take place. Rieser claims the birds became sick and could not be sold. The defendants deny this and claim that Rieser paid Parker $200 in consideration of Parker's dropping his plan to sell and agreeing to hold the birds another two weeks.

The birds, in fact, were not sold for another two weeks. It is undisputed that Rieser did pay Parker $200 on October 10th. I find that this was a loan, and not an outright payment, but this finding does not determine the present question. It is also undisputed that the birds became ill at some time with a respiratory infection, but the date is disputed.

Be that as it may, and assuming that the birds could be sold the second week in October, I do not believe that Parker wished to sell them at that time. I suspect that Mrs. Parker did, and that she caused him to take steps to consummate a sale, but that the lure of greater profits made him reluctant. He was financially close to the edge, which weighed in her favor, and I believe that Rieser's willingness to advance $200 to tide him over carried the day. To that extent Rieser was responsible for the delay in selling, which, due to the eventual effects of the disease, proved disasterous. I am entirely satisfied, however, that there was no agreement, express or implied, between Parker and Rieser, other than that the $200 might be charged against his account. I do not imagine that the prospect of selling more grain was displeasing to Rieser, and I may assume that Rieser even encouraged Parker to hold the birds, but I cannot find that by offering to advance $200 it changed his whole state of mind, substituting its decision for his, even though the $200 was given as encouragement.

There was no bargain, and no agreement. If Parker, having received the $200, had decided to sell the birds the next day, for instance, he would have

**4**

broken no promise to, or exacted by, Rieser. At the most Rieser merely hoped that Parker would keep the birds longer. The concept that the real responsibility for the delay in selling was Rieser's grew up afterwards, first as self-justification, and later as a legal excuse. I find and rule that it was neither.

It follows that the August 13th agreement was not modified. Neither do I have to consider whether, had Rieser been the proximate cause of the delay in selling, it would have incurred any legal responsibility for a disease which it is agreed was no one's direct fault. Cf. Hoadley v. Northern Transportation Co., 115 Mass. 304.

I find, as already stated, that the final amount due on Parker's account, after deducting the first check, was $5,455.94. This included the $200 October 10th loan, and a $100 loan in August.

■ The defendants contend that the contract was so indefinite for lack of specifying the price of feed, or the method of ascertaining the same, as to be unenforceable, and that, accordingly, I cannot determine any amount. The contract as drawn by Rieser, and as redrafted (in other particulars only) by Shattuck, certainly leaves much to be desired, and the defendants' point, if the agreement had been broken *in limine*, would have proved troublesome. Where, however, Parker regularly accepted grain at invoiced prices, and even in his eventual repudiation acknowledged the gross amount, it is now too late to say there was no specific agreement to pay. Ambiguity may be resolved by subsequent conduct of the parties. Atwood v. Boston, 310 Mass. 70, 37 N.E.2d 131. Even if one were to take the position that the contract here was so deficient as to be incapable of construction by conduct, cf. Marcelle, Inc., v. Sol. & S. Marcus Co., 274 Mass. 469, 175 N.E. 83, 74 A.L.R. 1012, that principle would not avail where there were completed acts of the parties. Mark v. Stuart-Howland Co., 226 Mass. 35, 115 N.E. 42, 2 A.L.R. 678. Acceptance of a stated price is such an act. Canadian Nat. R. Co. v. George M. Jones Co., 6 Cir., 27 F.2d 240.

■ The administratrix says that the action against her must fail because instituted against her prematurely, in violation of Mass.G.L.(Ter.Ed.) Ch. 197, § 1, which provides as follows: "An executor or administrator shall not be held to answer to an action by a creditor of the deceased commenced within six months after his giving bond for the performance of his trust, unless such action is brought for the recovery of a demand which would not be affected by the insolvency of the estate * * *."

Suit was brought within a week of her appointment. Even though this defect was not raised in the original answer, and was first presented by amendment after the six months had run, it was a defect in bar and not waived. Gallo v. Foley, 296 Mass. 306, 5 N.E.2d 425. No findings, accordingly, can be rendered against the administratrix for the $5,455.94.

■ The $3,658.10 certified check presents a different question. Under the statute if Rieser has a claim thereto which would not be affected by the insolvency of the estate, it may sue forthwith. This means if it had title, a lien, or even a preferred claim. Gallo v. Foley, supra. Rieser and Parker were joint payees of the check. A certified check constitutes an agreement by the certifying bank to pay. United States v. Commissioner of Banks, 254 Mass. 173, 149 N.E. 883. I find that this check was delivered to Rieser's representative and to Parker jointly. It is, of course, possible to have title to a check, as well as to the obligation it represents. Mangan v. Howard, 238 Mass. 1, 130 N.E. 76. I find and rule that by virtue of the delivery Rieser had at least joint title.

Rieser claims that under the agreement it had title even without delivery because a provision of the agreement gave it title to all the proceeds of the sale. Another paragraph tends to contradict this provision. It is not necessary to resolve this question.

To whatever extent Rieser had title is a question which would not be affected by insolvency. As to this, accordingly, the action was not premature. The ques-

tion being properly before me, I find and rule that Rieser is entitled to the entire check and the claim against the certifying bank represented thereby.

The defendant Parker claims that she is not personally liable under the agreement because it purported to create or recognize a partnership or joint venture between her and her husband, which cannot be done under Massachusetts law. Voss v. Sylvester, 203 Mass. 233, 89 N.E. 241. I find that she and her husband were, as a matter of fact, if not in law, somewhat so engaged. An obligation based merely on such activity cannot be enforced. Edgerly v. Equitable Life Assur. Soc., 287 Mass. 238, 191 N.E. 415. However, the invocation of this principle overlooks the fact that the wife herself, as well as the husband, signed the agreement. Her liability is asserted not because of the non-establishable joint venture, but on her signature. A married woman may contract with a third party. It does not become any the less her contract because her husband also contracted. Parker v. Kane, 4 Allen, Mass. 346; Binney v. Globe National Bank, 150 Mass. 574, 23 N.E. 380, 6 L.R.A. 379.

This raises, however, another question. As already stated, it is doubtful whether the agreement itself was enforceable. The agreement was to pay the invoiced price. Parker, by acknowledging and signing the invoices made the agreement definite, as to him. There is no evidence that Mrs. Parker ever saw, let alone signed, the invoices. If I could apply the principle of joint venture, I could hold her bound by his actions, but I cannot. Nor do I find as a fact that he was her agent with authority to agree on price. Consequently, so far as the claim against her individually is concerned I am squarely faced with the question earlier mentioned of the unenforceability of the original agreement because of lack of definiteness. I cannot hold that an agreement to purchase grain at the "invoiced prices" is enforceable in this case. Marble v. Standard Oil Co., 169 Mass. 553, 48 N.E. 783. If that meant fair market prices, or those charged by Rieser to its other customers, there is no evidence that the prices here invoiced and charged were such. Geo. W. Wilcox, Inc., v. Shell etc. Products, Inc., 283 Mass. 383, 186 N.E. 562. I will not infer that they were.

Rieser, however, has one more string to its bow. Paragraph 5 of the agreement provides that "the Consignees [Parkers] hereby guarantee the full payment of all bills and accounts for chicks and feed and fire insurance premium, furnished by the Consignor [Rieser], possession of which may be delivered to them hereunder;" I construe that to indicate that each of the Parkers was a guarantor of the other. I find that Mrs. Parker in fact understood that one of the reasons for her signing was that she was "backing up" her husband's signature. I hold that she was liable under paragraph 5 of the agreement as a guarantor. It does not seem to me inconsistent that she should be liable as a guarantor even though she may have been actively interested as principal (in a legally ineffective manner). On the contrary, the agreement seems intended to have just that effect.

A guarantee can be for an indefinite amount. Bishop v. Eaton, 161 Mass. 496, 37 N.E. 665. When Mrs. Parker executed such an open, indefinite guaranty she impliedly authorized the parties to complete its terms, at least so long as they acted in good faith. I find that they did. I accordingly hold that she is individually liable for whatever Parker received under the agreement, at the prices agreed to by him, so far as they relate to items listed in paragraph 5, except those which were paid by the purchaser's first check endorsed over by the parties to the bank as previously mentioned. This excludes the two loans. It also excludes litter (shavings) and medicine. It is not altogether easy from the evidence adduced to make this computation. The items which I find to be so established come to $4,519.70.

A question arises as to certain United States Savings Bonds that Parker rep-

resented to Rieser he had in order to induce Rieser to deal with him. Rieser contends that it has a security interest in these bonds by virtue of an agreement. No defendant admits to any knowledge of these bonds, and there is no evidence of their present existence. Indeed, there is no evidence of their prior existence except Parker's representation that he had them. Under these circumstances I cannot speculate, and I shall make no order with reference to bonds.

The plaintiff is entitled to judgment against Alice W. Parker individually in the amount of $4,519.70, with interest in the amount of $260.30, or $4,880.

The plaintiff is entitled to an order against Alice W. Parker as she is administratrix of the estate of Ralph E. Parker that she endorse the $3,658.10 check now in the possession of Shattuck in favor of the plaintiff, and cause same to be delivered to it. When said order has been complied with the action against Alice W. Parker as administratrix shall be dismissed.

The plaintiff to have costs against the defendant Parker individually. No other costs to be taxed.

### Supplemental Opinion.

The individual respondent has asked for an amendment of the original findings, or, alternatively, what is in effect declaratory relief, on the subject of the complainant's rights in respect to the satisfaction of the two judgments.

 Under ordinary circumstances a creditor is free to recover from either or both of two joint debtors in such proportions as he sees fit. He is not required to apply a partial payment against any particular part of the obligation, and the only prohibition is that he cannot recover in all more than the full amount of his claim.

The individual respondent asserts that this freedom of choice should not obtain in the case at bar, and points to the following provision in the agreement:

"8. The Consignees [Parkers] hereby agree that all checks given in payment for lot shipments of the aforementioned chicks or chickens, shall be made payable by the buyer of such chicks to both the Consignor [Rieser] and the Consignees [Parkers]." In spite of this agreement when the chickens were sold the checks, including the $3,658.10 check, did not bear Mrs. Parker's name.

Obviously there was some purpose in having her name on the checks. Giving her a share in the control of the check meant that she was entitled to some voice as to its disposition. Although the question is not free from doubt, it does not seem to me unreasonable to hold that this went far enough to cover the situation which has now arisen. Cf. Killoren v. Hernan, 303 Mass. 93, 20 N.E.2d 946.

I will hold that if Rieser realizes on the check, full credit for such amount may be taken by Mrs. Parker against her liability to satisfy the judgment heretofore ordered against her.

I make no change as to interest.