PETER COLE GANNETT vs. JAMES S. LOWELL, individually, as
trustee, and as administrator, & others.

Suffolk.  May 9, 1983. — July 5, 1983.

Present: HALE, C.J., GRANT, & KASS, JJ.

*Consumer Protection Act,* Availability of remedy.  *Fraud.  Joint Enter-
prise.  Fiduciary.*

This court did not consider a claim by the plaintiff in a civil action that a
release signed by him was invalid due to inadequate consideration
where the plaintiff had failed to raise this issue in the trial court.
[327-328]
The act of the administrator of an estate in obtaining a release of claims
from one who had entered into an agreement with the administrator's
decedent did not constitute trade or commerce within the scope of the
Consumer Protection Act.  [328]
There was no fiduciary relationship between the administrator of an es-
tate and one who had invested money for the development of a movie
script by the administrator's decedent, so that any failure by the ad-
ministrator to provide information to the investor concerning the
assets of the estate or the funds invested before obtaining a release from
the investor of all claims arising from the investment did not constitute
fraudulent concealment invalidating the release.  [328-330]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 10, 1981.

The case was heard by *Dimond, J.,* on motions for sum-
mary judgment.

*Steven Joshua Samuel* for the plaintiff.
*William B. Dailey* for the defendants.

HALE, C.J.  The plaintiff appeals from a judgment dis-
missing his complaint following the allowance of the de-
fendants' motions for summary judgment grounded on a
release signed by the plaintiff.  We hold that the plaintiff's
action is barred by the release and affirm the judgment.

On March 27, 1978, the plaintiff entered into an agree-
ment with the defendant James S. Lowell's intestate, Laurel

Lowell, wherein he agreed to invest $25,000 for the development by her of a professional movie script. By mid-February, 1980, Gannett had invested another $30,000 in the project. Laurel deposited those funds in a bank account under the name Sadri Productions. During the course of the project, the plaintiff kept in close contact with Laurel regarding its progress.

Subsequent to his mother's death in August, 1980, James, who had not been a party to this arrangement, was appointed administrator of his mother's estate. Upon obtaining the decedent's bank records he learned of the Sadri Productions bank account which contained $8,087.31. In a memorandum dated December 3, 1979, Laurel had indicated that the money in the Sadri Productions account belonged to the plaintiff. On November 28, 1980, the plaintiff and the administrator entered into an agreement wherein the plaintiff was to receive all money in the Sadri Productions account and the right to continue development of the film script. The agreement provided that the plaintiff in return "agrees to waive any further claim that I may have against the Estate of Laurel Lowell on account of [the agreement] dated 27 March, 1978, and does hereby release said Estate of Laurel Lowell, James S. Lowell, Administrator of the Estate of Laurel Lowell, and individually, and Ralph Lowell of and from all claims and demands from the beginning of the world to this date which arise or might arise by reason of his investment in the project above set forth." It was further agreed that if the project should be successful, profits would be split between the estate of Laurel and the plaintiff in the same percentages as had been set out in the March 27, 1978, agreement. The plaintiff was given complete authority to act in furtherance of the project without obtaining any additional agreement of the estate. The plaintiff was, however, to keep James advised, at least semi-annually, as to any progress made.

Subsequent to the signing of the November 28, 1980, release, it came to the plaintiff's attention that Laurel had apparently purchased silver coins for $9,295, and made mortgage payments of $1,380 on property owned by a Lowell family trust with Sadri Production funds.

The present action was commenced to recover the allegedly misappropriated assets, and damages. The complaint consisted of three counts: count 1 was against the estate for damages for misappropriation of funds, for an accounting, and for unfair and deceptive acts under G. L. c. 93A; count 2 was against James, individually and as administrator of the estate, for unfair and deceptive practices under G. L. c. 93A; count 3 was brought to reach and apply assets allegedly belonging to the "partnership" of Laurel and the plaintiff or of the plaintiff individually in the hands of other defendants.[1]

The plaintiff does not deny his execution of the release, nor does he deny that the release, if valid, precludes the bringing of the present action. Instead, the plaintiff attacks the validity of the release on three grounds: (1) that there was inadequate consideration for the release; (2) that it was obtained by unfair and deceptive practices in violation of G. L. c. 93A, § 11; and (3) that it was procured by fraudulent means.

"In deciding whether the entry of summary judgment was proper on the ground that there was no 'genuine issue as to any material fact' (Mass.R.Civ.P. 56[c], 365 Mass. 824 [1974]), it is important to determine which party has the burden of establishing a contested question of fact in this case." *First Natl. Bank* v. *Slade,* 379 Mass. 243, 245 (1979). Where the plaintiff impliedly acknowledges the effectiveness of the release, if valid, to preclude this action, it is his burden to produce specific facts which support his claim that the release is invalid. *Id.* at 245-246. Unsupported allegations will not suffice. Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). *Commonwealth* v. *Colonial Motor Sales, Inc.,* 11 Mass. App. Ct. 800, 805-806 (1981).

1. *Inadequate Consideration.*

We quickly dispose of the plaintiff's contention that the release is invalid due to inadequate consideration. This issue

---

[1] James, as administrator, filed a third-party complaint alleging that one John A. Manning, a companion of Laurel, had misappropriated monies of the Gannett-Laurel "venture." The third-party complaint is not at issue in this appeal.

was not raised in the plaintiff's pleadings or in his affidavit below. Therefore, it cannot be presented for the first time on appeal. *John B. Deary, Inc.* v. *Crane*, 4 Mass. App. Ct. 719, 724 (1976).

2. *Unfair and Deceptive Practices.*

General Laws c. 93A, § 11, as amended through St. 1979, c. 72, § 2, affords recovery to "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss . . . as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice." Section 1(*b*), as appearing in St. 1972, c. 123, defines "'trade' and 'commerce'" as including "the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth."

We do not think that James's actions in administering the estate constituted trade or commerce "directly or indirectly affecting the people of this Commonwealth." Moreover, G. L. c. 93A, § 11, "is not available where the transaction is strictly private in nature and is no way undertaken in the ordinary course of a trade or business." *Lantner* v. *Carson*, 374 Mass. 606, 608 (1978). See also *Begelfer* v. *Najarian*, 381 Mass. 177, 190-191 (1980); *Newton* v. *Moffie*, 13 Mass. App. Ct. 462, 466-469 (1982). James's act in obtaining a release from the plaintiff was a private act undertaken to settle the affairs of his deceased mother and was not undertaken in the ordinary course of any business. Accordingly, the plaintiff cannot successfully attack the release under the provisions of 93A.

3. *Common Law Fraud.*

In pleading the 93A cause of action, the plaintiff alleged all of the elements necessary to constitute common law fraud, although fraud was not specifically alleged. Assuming without deciding that the plaintiff's complaint was sufficient to plead common law fraud, we look to see whether

the plaintiff has produced evidence by affidavit or otherwise sufficient to preclude summary judgment on this basis. We conclude that he has not.

In his deposition, the plaintiff admitted that James had made no affirmative representation regarding the value of Laurel's estate or of the assets of the alleged "partnership" between her and the plaintiff. The plaintiff stated in the deposition that he was basing his cause of action solely on the alleged omissions of the defendant in failing to inform him, prior to the signing of the release, that Laurel apparently had purchased silver and made mortgage payments with funds invested by the plaintiff. However, "in the absence of a fiduciary relationship, silence cannot constitute fraudulent concealment." *Friedman* v. *Jablonski,* 371 Mass. 482, 485 n.3 (1976). *Stetson* v. *French,* 321 Mass. 195, 198-199 (1947). *Lynch* v. *Signal Fin. Co.,* 367 Mass. 503, 507-508 (1975). *Salinsky* v. *Perma Home Corp.,* 15 Mass. App. Ct. 193, 197 (1983).

In determining whether a fiduciary relationship existed between James and the plaintiff, we first look to the underlying relationship between the plaintiff and Laurel. For if the underlying relationship was fiduciary in nature by virtue of its being a partnership or joint venture (see *DeCotis* v. *D'Antona,* 350 Mass. 165, 168 [1966]), it is arguable that the administrator of the dead partner or joint venturer would also bear a fiduciary duty in an accounting with the surviving partner or joint venturer. Cf. *Ball* v. *Hopkins,* 268 Mass. 260, 266 (1929).

A joint venture "resembles a partnership and has many of its attributes." *Eastern Elec. Co.* v. *Taylor Woodrow Blitman Constr. Corp.,* 11 Mass. App. Ct. 192, 196 (1981). "It differs, however, from a partnership in that it is ordinarily, although not necessarily, limited to a single enterprise, whereas a partnership is usually formed for the transaction of a general business. As between the parties, as in the case of a partnership, the relationship of joint adventurers is a matter of intent and arises only when they intend to associate themselves as such." *Cardullo* v. *Landau,* 329

Mass. 5, 8 (1952). *Shain Inv. Co.* v. *Cohen,* 15 Mass. App. Ct. 4, 7 (1982).

Of the two, the plaintiff's agreement with Laurel for production of a movie script more closely resembles a joint venture than a partnership. However, the facts raised by the plaintiff in opposition to the defendants' motions for summary judgment, even when accepted as true, fail to give rise to either type of relationship. See *John Alden Transp. Co.* v. *Bloom,* 11 Mass. App. Ct. 920, 921 (1981).

The written agreement between them merely states that the plaintiff is investing money for the production of a professional script and provides for a percentage split of profits should the project prove successful. The agreement is silent as to an intent to create a partnership or joint venture. There is no provision for sharing losses or for joint control of performance. In his deposition the plaintiff made clear that although he made frequent checks on the progress of the investment, all business decisions were made by Laurel. "Substantial authority underscores the importance of the . . . consideration that '[a] right of mutual control or management of the enterprise' is an essential element of joint venture. 2 Williston, [Contracts] § 318A, at 563-564, 570, 579 [3d ed. 1959]." *Shain Inv. Co.* v. *Cohen, supra* at 9. The plaintiff was, therefore, merely an investor in a speculative undertaking and was no more a partner or joint venturer with Laurel than a bank is with a business in which it invests money. See *Cardullo* v. *Landau, supra* at 9; *Patriot Gen. Life Ins. Co.* v. *CFC Inv. Co.,* 11 Mass. App. Ct. 857 (1981). This case also lacks the factual basis on which to find a fiduciary relationship grounded on something less than a "textbook joint venture." See *Shain, supra* at 10-11, and *Shinberg* v. *Garfinkle,* 361 Mass. 109, 114-115 (1972).

Other than a partnership or joint venture, the plaintiff has alleged no basis for finding that a fiduciary duty was owed him by James. Thus, the plaintiff has failed to demonstrate facts sufficient to preclude summary judgment on his fraud claim.

*Judgment affirmed.*