PETRICCA DEVELOPMENT LIMIT-
ED PARTNERSHIP and Berkshire
Concrete Corp., Plaintiffs,

v.

PIONEER DEVELOPMENT COMPA-
NY, Tamarack Investors Co., Inc. and
Pioneer Berkshire Crossing Company,
Defendants.

No. Civ.A. 96–30071–FHF.

United States District Court,
D. Massachusetts.

March 24, 1999.

James R. DeGiacomo, John W. Gahan, III, Roche, Carens & DeGiacomo, P.C., Boston, MA, for Petricca Development Limited Partnership, plaintiffs.

Robert J. Muldoon, Jr., Sherin & Lodgen, Boston, MA, Rhonda B. Parker, Sherin & Lodgen, Boston, MA, Michael S. Bloom, Sherin and Lodgen, Boston, MA, for Pioneer Development Company, defendants.

## MEMORANDUM AND ORDER

FREEDMAN, Senior District Judge.

### I. INTRODUCTION

On June 23, 1992, Pioneer Development Company ("Pioneer"), a New York partnership, entered an option contract to buy a parcel of land in Pittsfield, Massachusetts from Petricca Development Limited Partnership ("Petricca"), a Massachusetts limited partnership.[1] Pioneer never exercised its option to buy the land, instead purchasing another parcel of land about one half mile away and developing a Wal-Mart anchored shopping center on that parcel.

In May of 1996, Petricca sued Pioneer in a five-count complaint which sought a declaratory judgment that a joint venture existed between the parties (Count I) and alleged a breach of fiduciary duty (Count II), breach of contract (Count III), deceit (Count IV), and a violation of Mass.Gen. Laws ch. 93A (Count V). On December 11, 1996, the Court dismissed Count V. *See*

*Petricca Development Ltd. Partnership et al. v. Pioneer Dev. Co. et al.*, C.A. No. 96–30071–FHF, slip op. at 9 (D.Mass. Dec.11, 1996). At oral argument on the present motion on October 10, 1998, the Court granted Petricca's voluntary motion to dismiss Count IV and Petricca also voluntarily withdrew Count III.

Pioneer now moves for summary judgment on Counts I and II, contending that because it never exercised its option to buy Petricca's land, no joint venture ever existed and, consequently, no fiduciary duty to Petricca could have arisen. Petricca opposes the motion.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and a fact is "material" if it is one which "might affect the outcome of the suit under the governing law." *See Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 (1st Cir.), *cert. denied*, 511 U.S. 1126, 114 S.Ct. 2133, 128 L.Ed.2d 863 (1994). " '[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.' " *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted)). Moreover, summary judgment may be ap-

---

**1.** Pioneer Development Company, Tamarack Investors Company, Inc., and Pioneer Berkshire Crossing Company are all related companies and for ease of reference will be collectively referred to as Pioneer. Petricca Development Limited Partnership and Berkshire Concrete Corporation are also related entities and will be collectively referred to as Petricca for ease of reference. The Court's ruling, of course, binds all of the parties.

propriate "[e]ven in cases where elusive concepts such as motive or intent are at issue ... if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz*, 896 F.2d at 8. In addition, Fed.R.Civ.P. 56(c) "mandates the entry of summary judgment ... upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.' " *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir.) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993)), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). In deciding a motion for summary judgment, the Court "state[s] the facts in the light most favorable to the nonmoving party, indulging all inferences in that party's favor." *Dykes v. Depuy, Inc.*, 140 F.3d 31, 33 (1st Cir.1998).

### III. FACTUAL AND PROCEDURAL HISTORY

On June 23, 1992, Pioneer and Petricca executed a one-year extendable option contract that in essence granted Pioneer the right to purchase land from Petricca on which Pioneer wished to develop a Wal-Mart store or similar large commercial facility. The option contract provided that in consideration for this right, Pioneer would pay Petricca set fees on certain dates. Section thirteen of the option contract entitled Petricca to return those option fees, and thereby enter a future "joint venture" with Pioneer to develop and own the site.

The fourth section of the option contract explained the mechanics of the option contract:

> 4. *Exercise of Option.* [Pioneer] may exercise its option to purchase any one or more of the parcels comprising the Premises at any time during the Option Term by giving written notice to [Petricca] ....
>
> In the event [Pioneer] does not exercise its Option to purchase any Parcel of the Premises during the initial term or any extensions thereof ... this Agreement shall expire and terminate and neither party shall have any liability to the other under or pursuant to this Agreement.

The next three sections of the option contract, which detailed the purchase of the land, all began: "In the event [Pioneer] exercises its Option...." The following five sections defined the respective responsibilities of Pioneer and Petricca if Pioneer bought the land.

Section twenty-one provided that in the event of Pioneer's breach of the option contract's obligations, Petricca's "sole and exclusive remedy, [would be to] terminate this Agreement, in which case neither party shall have any further liability or obligation to the other hereunder."

Initially, Petricca chose to accept the option fees, but in early October, elected to forego the option fees and enter the "joint venture." On October 7, 1992, after more negotiations between Pioneer and Petricca, the two parties executed an addendum to the option contract. The Preliminary Statement of the addendum stated that Petricca had "exercised its option ... to participate as a joint venture partner, with [Pioneer] in the development of [the site]."

The addendum explained the potential formation of a joint venture called Pioneer/Petricca Associates. This joint venture would arise through the sequential creation of several business entities by Pioneer with Petricca joining after Pioneer exercised its option to buy Petricca's land. First, Pioneer would join a straw partner

to form a general partnership called Tamarack Plaza Company ("TPC"), which would be responsible for the "right-to-build development phase" allowing construction on Petricca's land. To allow TPC to perform this phase, Pioneer would assign its rights under the option contract to buy Petricca's land to TPC, a company it controlled. Importantly, the addendum established that obtaining the right-to-build "will be in the sole discretion of Pioneer and may be discontinued at any time and for any reason." In addition, if Pioneer chose to stop the right-to-build phase, Petricca would pay 32.5% of Pioneer's "Development Costs and Overhead."

The next paragraph of the addendum read:

> 2. Upon exercise of the Option to purchase any portion of the Land, Petricca will be admitted as a partner of [TPC], the straw partner will withdraw as a partner, and the partnership will change its name to Pioneer/Petricca Associates.

On October 9, 1992, Pioneer gave written notice to the escrow agent holding the option payments for Petricca that "[Petricca] and [Pioneer] have elected to participate in a joint venture" and instructed the agent to return the option payments to Pioneer. In December 1992, Pioneer filed two rezoning petitions with the Pittsfield City Council to get Petricca's land rezoned to allow commercial development. On March 23, 1993, the Pittsfield City Council tabled the rezoning petitions after they failed to receive sufficient votes for approval.

Several days later, without notifying Petricca, Pioneer began negotiations with another property owner in Pittsfield to obtain an option on his land, located about half a mile from Petricca's site. On April 7, 1993, Pioneer signed an option for that property. On April 8, Pioneer's counsel requested that the City Council take no action on the Petricca rezoning petitions. Between April 8, and the end of April, Pioneer inquired whether the city council-

ors would support rezoning petitions for the second property.

On May 19, 1993, Pioneer informed Petricca that it was withdrawing the rezoning petitions for Petricca's land and stated that Petricca's election to join the joint venture was no longer effective due to impossibility of performance. As a result, Pioneer tendered option payments to Petricca. Petricca, however, refused to accept the offered payments insisting that it had already joined the joint venture. On May 25, 1993, Pioneer withdrew the rezoning petitions for Petricca's land and later developed a WalMart-anchored shopping center on the alternative site. This lawsuit ensued, with Petricca's claims now reduced to the issue of the existence of a joint venture and Pioneer's alleged breach of an ensuing fiduciary duty.

## IV. DISCUSSION

Pioneer asserts that the Court should grant summary judgment on the counts alleging existence of a joint venture and breach of a fiduciary duty because no genuine issue of material fact exists, and that as a matter of law no joint venture arose to create fiduciary duties between the parties.

Petricca counters that the creation of a joint venture is a mixed question of law and fact not properly determined on summary judgment. Petricca claims that its "election to exercise its option combined with the exchange of consideration (the return of the option fees) and the creation of the more detailed signed [addendum] which constitute[d] the acts legally sufficient to create the joint venture." Petricca next claims that Pioneer breached the fiduciary duty arising from the joint venture by purchasing and developing another site.

■ Joint ventures in Massachusetts create fiduciary duties between the parties, demanding the utmost duty of good faith and loyalty. *See Cardullo v. Landau,* 329 Mass. 5, 105 N.E.2d 843, 845 (1952)

("If the relationship of the parties here was of a fiduciary nature it must be, as the plaintiff contends, because they were either partners or joint venturers"). As a general matter, joint ventures in Massachusetts arise only if the parties intended to create such a relationship. *See id.* The parties' contractual agreement establishes their obligations to each other and dictates whether they created a joint venture. *See Edgerly v. Equitable Life Assur. Soc.,* 287 Mass. 238, 191 N.E. 415, 417 (1934); *Eastern Elec. Co. v. Taylor Woodrow Blitman Constr. Corp.,* 11 Mass.App.Ct. 192, 414 N.E.2d 1023, 1027 (1981) (no fiduciary responsibility where one party had control and protection of indemnification). "As with other contracts, one which may create a joint venture will be examined to see what the objective undertakings of the parties were." *Eastern Elec.,* 414 N.E.2d at 1027.

■■■ Massachusetts courts consider several factors which may indicate the existence of a joint venture. These factors include:

(1) an agreement by the parties manifesting their intention to associate for joint profit not amounting to a partnership or a corporation; (2) a contribution of money, property, effort, knowledge, skill, or other assets to a common undertaking; (3) a joint property interest in all or parts of the subject matter of the venture; (4) a right to participate in the control or management of the enterprise; (5) an expectation of profit; (6) a right to share in profits; (7) an express or implied duty to share in losses; and (8) a limitation to a single undertaking (or possibly a small number of enterprises).

*Shain Investment Co., Inc. v. Cohen,* 15 Mass.App.Ct. 4, 443 N.E.2d 126, 130 (1982). The *Shain* court recognized that " '[a] right of mutual control or management of the enterprise' is an essential element of joint venture." *Id.* (quoting 2 Williston, Contracts § 318A, at 563–64).

In this case, the existence of a joint venture hinges on interpretation of the parties' agreement. Generally, "under Massachusetts law, the interpretation of a contract is ordinarily a question of law for the court." *Rey v. Lafferty,* 990 F.2d 1379, 1384 (1st Cir.1993) (internal quotations omitted); *see, e.g., Lawrence–Lynch Corp. v. Department of Envtl. Management,* 392 Mass. 681, 467 N.E.2d 838, 840 (1984); *Sparks v. Microwave Assoc., Inc.,* 359 Mass. 597, 270 N.E.2d 909, 911 (1971).[2] If the words of an agreement are clear and unambiguous, they must be interpreted according to their ordinary and usual sense. *See Citation Ins. Co. v. Gomez,* 426 Mass. 379, 688 N.E.2d 951, 952 (1998). The language in a contract is only ambiguous if its "terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and obligations undertaken." *Rey,* 990 F.2d at 1384.

■■■ When searching for plain meaning, the Court will consider "every phrase and clause . . . [in light of] all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties." *See J.A. Sullivan Corp. v. Commonwealth,* 397 Mass. 789, 494 N.E.2d 374, 378 (1986). In other words, " '[t]he interpretation of an integrated agreement is directed to the meaning of the terms of the writing or writings in the light of the circumstances' of the transaction." *Thomas v. Christensen,* 12 Mass.App.Ct. 169, 422 N.E.2d 472, 476 (1981) (quoting Restatement (Second) of Contracts § 212(1) and cmt. b (1981)). Disagreement by the parties as to the meaning of the contract does not create ambiguity. *See Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.,* 767

**2.** The option contract stated that it would be governed by Massachusetts law. This choice of law provision is undisputed.

F.Supp. 363, 370 (D.Mass.1991); *Gomez*, 688 N.E.2d. at 953.

■ The relevant inquiry in this case is whether Pioneer and Petricca intended to create a joint venture by executing the option contract and its addendum. *See Cardullo*, 105 N.E.2d at 845; *Taylor*, 414 N.E.2d at 1027. The facts are not in dispute; the parties only contest the legal significance of the option contract they executed.

Here, the option contract and its addendum are not ambiguous. They clearly establish the parties' responsibilities and obligations to each other. Section four of the option contract specifically provides that Pioneer had total control over whether to buy Petricca's land. Sections four and twenty-one stated that Petricca's only remedy if Pioneer chose not to exercise the option was to walk away with its property unencumbered by the contract. Pioneer's total discretion and control is also clearly apparent in the words of the addendum: "Development will be in the sole discretion of Pioneer and may be discontinued at any time and for any reason."

When viewed together the two documents are consistent and establish the overall intent of the parties: to give Pioneer total control of the genesis of a joint venture. *See Chelsea Indust., Inc. v. Florence*, 358 Mass. 50, 260 N.E.2d 732, 735 (1970) (instructing courts to read documents together to determine intentions of parties); *Chase Commercial Corp. v. Owen*, 32 Mass.App.Ct. 248, 588 N.E.2d 705, 707 (1992); *Katz v. Belko*, 16 Mass. App.Ct. 178, 450 N.E.2d 630, 632 (1983). By specifically precluding Petricca from any participation or control in the development phase and keeping total discretion in Pioneer's hands as to the continuation of the project, the agreement purposefully excludes the essential element of shared control needed to form a joint venture. *See Shain*, 443 N.E.2d at 126; *see also Gannett v. Lowell*, 16 Mass.App.Ct. 325, 450 N.E.2d 1121, 1125 (1983). Further, the wording of the sequential entity estab-

lishment coupled with the addendum's use of the future tense establishes that the parties lacked the present intention to associate as joint venturers. *See Mendel Kern v. Workshop, Inc.*, 400 Mass. 277, 508 N.E.2d 853, 855–56 (1987) (language of agreement cast in future tense indicates no present intent to be bound); *see also Shain*, 443 N.E.2d at 126 (agreement with intent to associate indicates joint venture). The parties' lack of present intent to create a joint venture is further supported by the failure of the contract's condition precedent to the creation of a joint venture.

Under Massachusetts law, a condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract. *See Malden Knitting Mills v. United States Rubber Co.*, 301 Mass. 229, 16 N.E.2d 707, 710 (1938); *Wood v. Roy Lapidus, Inc.*, 10 Mass.App. Ct. 761, 413 N.E.2d 345, 347 n. 5 (1980). Parties may establish any condition precedent they wish and "[i]f the condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced." *Massachusetts Mun. Wholesale Elec. Co. v. Danvers*, 411 Mass. 39, 577 N.E.2d 283, 288 (1991) (citing 5 S. Williston, Contracts § 663 (3d ed. 1961 & Supp.1990) and Restatement (Second) of Contracts § 225 (1981)). "In the absence of the usual [emphatic] words, a condition precedent may nonetheless be found to exist if the intent of the parties to create one is clearly manifested in the contract as a whole." *Id.* (citing *King Features Syndicate, Inc. v. Cape Cod Broad. Co.*, 317 Mass. 652, 59 N.E.2d 481, 483 (1945)).

In this case, the addendum used the future tense to describe the creation of a future joint venture. It conditioned Petricca's entrance into Pioneer/Petricca Associates "[u]pon exercise of the Option to purchase any portion of the Land." In view of Pioneer's absolute discretion over whether to exercise the option, and Pioneer's absolute control over the development phase of the project, the Court con-

cludes that Pioneer's exercise of the option to buy Petricca's land constituted a clear condition precedent to the parties' creation of a joint venture. *See id.* Consequently, the Court concludes that Pioneer's failure to exercise its option precluded the parties from creating a joint venture. *See id.; see also Satellite Broadcasting, Cable, Inc. v. Telefonica De Espana, S.A.*, 786 F.Supp. 1089, 1094–95, 1098 (D.P.R.1992) (holding under similar Puerto Rico contract law that no joint venture or fiduciary duties formed when condition precedent not fulfilled).

Because the option contract lacks the elements of shared control and present agreement of intent, *see Shain*, 443 N.E.2d at 126, and the parties never satisfied a condition precedent to entering their proposed "partnership," the Court concludes that the parties formed "a relationship inconsistent with, and unlike, the usual fully cooperative, quasi-fiduciary undertakings to each other of partners in a partnership operation or of joint venturers." *Eastern Elec.*, 414 N.E.2d at 1028 (special control over project indicative of no joint venture).

Because the relationship between Pioneer and Petricca was not a joint venture and does not serve as the basis for a fiduciary duty between the parties, Pioneer is entitled to judgment as a matter of law. *See Cardullo*, 105 N.E.2d at 846 (failure to establish joint venture precludes finding of fiduciary duty); *Eastern Elec.*, 414 N.E.2d at 1027 (existence of joint venture dictated by contract).

## V. CONCLUSION

For the foregoing reasons, Pioneer's motion for summary judgment on Counts I and II is GRANTED.

It is So Ordered.