# United States Court of Appeals
## For the First Circuit

No. 99-1538

PETRICCA DEVELOPMENT LIMITED PARTNERSHIP
AND BERKSHIRE CONCRETE CORPORATION,

Plaintiffs, Appellants,

v.

PIONEER DEVELOPMENT COMPANY,
TAMARACK INVESTORS CO., INC. AND
PIONEER BERKSHIRE CROSSING COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Frank H. Freedman, Senior U.S. District Judge]

Before

Torruella, Chief Judge,

Cyr, Senior Circuit Judge,

and Stahl, Circuit Judge.

John W. Gahan III, with whom Laurie Alexander-Krom and Roche, Carens & DeGiacomo, P.C. were on brief for Appellants.
Robert J. Muldoon, Jr., with whom Margaret H. Paget and Sherin and Lodgen LLP were on brief for Appellees.

June 9, 2000

**CYR, Senior Circuit Judge.** Petricca Development Limited Partnership and Berkshire Concrete Corporation (collectively: "Petricca") appeal from various district court orders which dismissed their claims against defendant-appellee Pioneer Development Company ("Pioneer") for breach of fiduciary duty and unfair or deceptive trade practices allegedly arising out of Pioneer's unilateral abandonment of a planned real estate venture with Petricca. We affirm the district court judgment.

## I

### BACKGROUND

In June 1992, Petricca and Tamarack Investors Company, Inc., a business entity controlled by Pioneer, entered into a written agreement which granted Pioneer a renewable one-year option to purchase two parcels of land which Petricca owned in Pittsfield, Massachusetts, upon which Pioneer planned to develop a WalMart shopping center. The agreement provided that (1) Pioneer would pay Petricca $11,300 per month in option fees; (2) "In the event [Pioneer] does not exercise its Option . . . , th[e] Agreement shall expire and terminate and neither party shall have any liability to the other under or pursuant to this Agreement[,]"; and (3) "In the event [Pioneer] exercises its Option, th[e] Agreement shall . . . become a contract for the purchase and sale of the [land] . . . on the terms and conditions hereinafter set forth." Were Pioneer to breach the agreement, Petricca's "sole and exclusive

3

remedy [would be to] terminate th[e] Agreement, in which case neither party [would] have any further liability or obligation to the other . . . ." The agreement also contained the following integration clause: "This agreement constitutes the sole and entire agreement between [the parties]."

Further, the agreement afforded Petricca an option to participate in a joint venture with Pioneer to develop the shopping center. The "basic terms" of any such joint venture were described in Exhibit C, as follows: "This letter is intended to be a memorandum of understanding which shall serve as the basis for a more detailed partnership agreement based on the following terms[.]" Under the option, Petricca had thirty days within which to decide whether to join Pioneer in the joint venture, at which time Pioneer would be entitled to reimbursement for all option fees previously paid. Thereafter, a new partnership — Pioneer/Petricca Associates — would be formed, and "upon the closing of a construction loan," Petricca would transfer the land title to the new partnership. Pioneer would pay the purchase price to Petricca, whereupon Pioneer would acquire a 32.5% ownership interest in the new partnership. Pioneer expressly retained sole responsibility for obtaining the legal right to build, as well as for the actual construction, the legal representation of the partnership, and the shopping center management. Finally, Exhibit C, which included substantial handwritten corrections and insertions, identified itself

as "the outline for preparation of a formal agreement to govern our business relationship."

In July 1992, Petricca afforded Pioneer due notice that it intended to participate in the joint venture. On October 7, Pioneer and Petricca executed an addendum to their June option agreement, noting that "Petricca exercised its option" to participate in the joint venture. The October 7 addendum replaced the original Exhibit C, in their June option contract, with a new Exhibit C which announced at the outset: "This letter agreement shall serve as a record of our mutual understanding regarding the terms of our joint venture arrangement as described in paragraph 13 of the [June option agreement]." The new Exhibit C further provided that "the transactions will be concluded in accordance with the Outline of Structure for Pioneer/Petricca Associates, a copy of which is attached hereto and incorporated by reference."

The referenced outline set forth the following terms: First, Pioneer and a straw partner would form a general partnership — Tamarack Plaza Company — to handle the right-to-build development stage which would precede the construction phase. Pioneer would assign its June option contract rights to Tamarack Plaza Company, and amend the June contract to reflect the joint venture arrangement with Petricca. Second, Pioneer would pay the new partnership for all costs of development, necessary personnel and expertise, and would retain sole

5

discretion to discontinue development "at any time and for any reason." Upon any such discontinuation, Petricca would reimburse Pioneer for 32.5% of its development costs. Id. The Outline further provided that "[u]pon exercise of [Pioneer's] Option to purchase any portion of the Land, Petricca will be admitted as a partner of Tamarack Plaza Company, the straw partner will withdraw as a partner, and the partnership will change its name to Pioneer/Petricca Associates." Finally, the October 7 addendum stated: "Except as amended by this [addendum], the [June] Option Agreement, including without limitation, Petricca's exercise of its option to participate in the joint venture, shall remain in full force and effect."

On October 9, 1992, Pioneer notified the designated escrow agent that Pioneer and Petricca had "elected to participate in a joint venture," and requested reimbursement for the $22,600 in option fees Pioneer had paid Petricca to date. In December 1992, Pioneer filed rezoning petitions with the city council, as required before a shopping facility could be constructed on the Petricca land. In March 1993, however, Pioneer failed to gain city council approval for its rezoning petitions. During April 1993, unbeknownst to Petricca, Pioneer negotiated an option to purchase another property approximately one mile from the Petricca parcels, then requested the city council to suspend further action on the pending zoning applications relating to the Petricca parcels.

In May 1993, Pioneer informed Petricca that the failure to obtain zoning approval rendered their joint venture impossible of performance, and that the zoning applications were being withdrawn. When Pioneer proposed to pay option fees for the October 1992 — May 1993 period, Petricca rejected the proposal. Eventually, Pioneer developed the WalMart facility at the other site.

In due course, Petricca brought the present action against Pioneer, demanding, inter alia, (1) a declaratory judgment that the parties had commenced their joint venture as early as July or October 1992 (Count 1); (2) damages and costs for Pioneer's breach, as a joint venturer, of its fiduciary duty of good faith and loyalty to Petricca in negotiating to purchase the alternate site for the shopping center without Petricca's knowledge (Count 2); and (3) treble damages for Pioneer's willful violation of the "unfair or deceptive trade practices" provisions of Mass. Gen. Laws Ann. ch. 93A (Count 5).[1] Pioneer successfully moved to dismiss Count 5 pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Chapter 93A is inapplicable to incipient business relationships between joint venturers.

Thereafter, Pioneer successfully moved for summary judgment on Counts 1 and 2. The district court ruled that the June option

---

[1]Petricca voluntarily dismissed Counts 3 and 4, respectively alleging breach of contract and deceit.

7

contract and its October addendum were unambiguous in precluding any joint venture unless and until Pioneer had exercised its option to purchase the Petricca land, a condition precedent which was never satisfied. Petricca Dev. Ltd. Partnership v. Pioneer Dev. Co., 40 F. Supp.2d 49 (D. Mass. 1999). On appeal, Petricca challenges both the Rule 12(b)(6) dismissal of Count 5 and the summary judgment rulings relating to Counts 1 and 2.

## DISCUSSION

### A.   The Breach of Fiduciary Duty Claim

Petricca first contends that the district court erroneously determined that the June contract and October addendum unambiguously demonstrated a mutual intention that the joint venture not be established until such time as Pioneer opted to purchase the Petricca land.  Instead, Petricca insists that these documents, as well as other evidence, generate a trialworthy issue as to whether the parties intended that the joint venture relationship arise in July 1992, at the time Petricca exercised its option to participate in the joint venture. Since joint venturers unquestionably owe one another a generalized duty of good faith and utmost loyalty, see Zimmerman v. Bogoff, 524 N.E.2d 849, 855 (Mass. 1988); Cardullo v. Landau, 105 N.E.2d 843, 845 (Mass. 1952), Petricca suggests that Pioneer breached its duty by unilaterally aborting its efforts to gain city council approval of the rezoning required to enable development of the Petricca land, and instead surreptitiously negotiating an alternate land deal.[2]

---

[2]Summary judgment rulings are reviewed de novo, with all reasonable inferences drawn against the moving party, in order to determine whether there is a genuine issue of material fact or the moving party is entitled to judgment as a matter of law. See Randlett v. Shalala, 118 F.3d 857, 861 (1st Cir. 1997).

Under Massachusetts law, the existence of a joint venture is entirely dependent upon the parties' intent, which may turn on many factors:

> (1) an agreement by the parties manifesting their intention to associate for joint profit not amounting to a partnership or a corporation; (2) a contribution of money, property, effort, knowledge, skill, or other assets to a common undertaking; (3) a joint property interest in all or parts of the subject matter of the venture; (4) a right to participate in the control or management of the enterprise; (5) an expectation of profit; (6) a right to share in profits; (7) an express or implied duty to share in losses; and (8) a limitation to a single undertaking (or possibly a small number of enterprises).

Shain Inv. Co. v. Cohen, 443 N.E.2d 126, 130 (Mass. App. Ct. 1982) (citing 2 Samuel Williston, Contracts § 318, at 555-56, § 318A, at 563-65, 574, 579 (3d ed. 1959)).[3]  Where the contract language is unambiguous, its purport may be determined as a matter of law.  See Lawrence-Lynch Corp. v. Department of Envtl. Mgt., 467 N.E.2d 838, 840 (Mass. 1984); see also Rey v. Lafferty, 990 F.2d 1379, 1384 (1st Cir. 1993) (construing Massachusetts law).

Although our review is plenary, the trial court's analysis of the summary judgment record in the instant case is so cogent and

---

[3]Although Massachusetts partnerships and joint ventures share many of these same attributes, a "business relationship . . . limited in scope to the acquisition and development of [a single] property . . . is better termed a 'joint venture' than a partnership."  Loft v. Lapidus, 936 F.2d 633, 637 n.6 (1st Cir. 1991) (citing Gurney v. Cumberland Farms, Inc., 550 N.E.2d 127, 133 (Mass. 1990)).

10

comprehensive that any extended exegesis would be superfluous. <u>See</u> <u>Petricca Dev. Ltd. Partnership</u>, 40 F. Supp.2d at 49. The essential issue in this case is not whether the parties intended a joint venture — for surely they did — but <u>when</u> they intended that the joint venture commence. Notwithstanding an utter absence of support in the contract language, Petricca insists that a joint venture came into existence on July 1992, the date it notified Pioneer of its election to participate in a joint venture, or at the very latest on October 7, 1992, the date the contract addendum was executed.

Under the eight <u>Shain</u> criteria, <u>see</u> <u>supra</u>, it is clear that these parties contemplated that their post-election business relationship should consist in at least two discrete stages. First, during the right-to-build development stage, Pioneer had the unilateral right, as well as the sole discretion, to discontinue its development efforts at any time and for any reason. Pioneer and its straw partner would form a partnership called Tamarack Plaza Company to undertake its preparatory mission. Plainly, unless and until the Petricca land could be rezoned, Pioneer would not be able to develop the shopping facility, nor would it have any financial incentive to exercise its option to purchase the land as originally zoned.[4]

---

[4]Frequently, joint ventures of this variety are anticipatory in nature. <u>Cf., e.g.</u>, <u>HDA Parking Developers, Inc.</u> v. <u>Mount Vernon Hosp., Inc.</u>, 687 N.Y.S.2d 663, 664 (App. Div.)(affirming summary judgment for defendant hospital where parties had "only memorialized their intent to form, <u>in</u> <u>the</u> <u>future</u>, a joint venture" to operate a parking garage once

11

Second, after the right-to-build stage had been successfully completed, the contract provided that Pioneer was to purchase the Petricca land. Only then would Petricca replace the straw partner as a copartner in the Tamarack Plaza Company, and the partnership name would change to Pioneer/Petricca Associates.

As the district court aptly noted, this temporal demarcation unambiguously indicates that the joint venture was not to commence until Pioneer exercised its option to purchase the Petricca land. During the earlier, development stage, Petricca had no meaningful control over any aspect of the business operations, which remained entirely in the hands of Tamarack Plaza Company. See Judge v. Gallagher, 461 N.E.2d 261, 264 (Mass. App. Ct.) (noting that right to control normally is "essential element" of joint venture), review denied, 465 N.E.2d 261 (Mass. 1984); Shain Inv. Co., 443 N.E.2d at 126; cf. Klose v. Wood Valley Racquet Club, Inc., 975 P.2d 1218, 1224 (Kan. 1999) (requiring that "joint venturer have an equal right of control over the instrumentality" (emphasis added)). By contrast, in the cases cited by Petricca the complainant possessed at least some control. See, e.g., Shain Inv. Co., 443 N.E.2d at 131 (noting that contract made party "more than a spectator in the enterprise" by

the developer leased the garage from the City; "the hospital [properly] opted out of the anticipated joint venture . . . when it became apparent that this joint venture could never be formed due to the City's refusal to . . . lease the garage to a joint venture involving a developer"), appeal denied, 697 N.Y.S.2d 562 (1999).

12

affording him a "role in the decision making process"); see also

Zimmerman, 524 N.E.2d at 854 (noting that party "did 'control . . . the

purse strings of the enterprise'" (citation omitted)).  Moreover, even

if Pioneer were to breach the contract, Petricca's "sole and exclusive

remedy [would be to] terminate th[e] Agreement, in which case neither

party [would] have any further liability or obligation to the other .

. . ."

Of course, since Pioneer never exercised its option to

purchase the Petricca land, Petricca could not be said to have made any

"contribution of money, property, effort, knowledge, skill, or other

assets."  Shain Inv. Co., 443 N.E.2d at 130.  Nor could Pioneer and

Petricca have acquired "a joint property interest in all or parts of

the subject matter of the venture [viz., the Petricca parcels]."  Id.

Petricca instead argues that Pioneer's simple option to

purchase the Petricca land constituted a sufficient "joint property

interest" to satisfy the third Shain criterion.  Petricca cites no

authority for its novel proposition, however, nor have we found any.

Rather, Pioneer's options to purchase are more aptly analogized to

contractual rights which may be converted into property interests at

the election of the optionee.  See, e.g., LDA Acquisition v. Flag

Wharf, Inc. (In re Competrol Acquisition Partnership), 203 B.R. 914,

917 (Bankr. D. Del. 1996) ("As a general rule of Massachusetts law, the

granting of an option to purchase property does not convey a property

13

interest in the subject of the option.") (citing New England Trust Co. v. Spaulding, 38 N.E.2d 672, 676 (Mass. 1941)); Webber Lumber & Supply Co. v. Trucklease Corp. (In re Webber Lumber & Supply Co.), 134 B.R. 76, 78-79 (Bankr. D. Mass. 1991).[5]

Petricca can muster only a few tenuous challenges to the sturdy rationale adopted by the district court. For instance, it notes that the October addendum says that "Petricca exercised its option," and by using the past tense suggests that the joint venture already existed. On the contrary, the quoted language simply described an historical event: Petricca's July 1992 election. Neither the June contract nor the October addendum defined Petricca's election as an event which would actuate a joint venture.

Petricca also claims that the October addendum arguably employed more emphatic language and assumed a more final form than the language in the June contract (which, for example, contained many handwritten additions and strikeouts) by describing the terms of the joint venture. Its argument begs the question, however, since there is no serious dispute that the parties anticipated that a joint venture

---

[5]Moreover, even if the option contract were deemed to have conveyed a real property interest to Pioneer, the mere fact that two parties hold "joint property . . . does not of itself establish a partnership." Mass. Gen. Laws Ann. ch. 108A, § 7(2) (emphasis added). See Loft, 936 F.2d at 637 n.6 (noting that laws governing partnerships normally apply to joint ventures as well); Edgerly v. Equitable Life Assur. Soc'y of the U.S., 191 N.E. 415, 417 (Mass. 1934) ("A joint adventure . . . resembles in many respects a partnership.").

14

would be created; instead, the dispute concerns only the timing of its creation. Whatever their differences, both Exhibits C — the one in the June contract and the one in the October addendum — make very clear that the Petricca-Pioneer business relationship could not meet the Shain criteria until Pioneer exercised its option to purchase the Petricca land and Pioneer/Petricca Associates had been formed.

With the same mission in mind, Petricca points to certain extra-contractual evidence, such as internal memoranda generated by Pioneer in 1992 referencing Petricca as Pioneer's "partner" and describing "a meeting of the minds on the basic business deal." Assuming arguendo that the integration clause in the June option contract contemplated consideration of such evidence, see Shain Inv. Co., 443 N.E.2d at 132 (noting that "under the parol evidence rule the writing will control if it is an integrated agreement"); Bendetson v. Coolidge, 390 N.E.2d 1124, 1126-27 (Mass. App. Ct. 1979) (same); see also Rey, 990 F.2d at 1385 ("[P]arol evidence may not be used to 'create ambiguity where none otherwise exists.'" (citation omitted)), none of the evidence even remotely contradicts the contract or its addendum on the pivotal timing issue. Similarly, the referenced statements in the Pioneer memoranda strike us as little more than casual prolepses.

Petricca points also to the fact that Pioneer — just two days after the execution of the October 1992 addendum — asked the escrow

15

agent to reimburse it for the $22,600 in option fees previously paid to Petricca. Petricca argues that reimbursement was due under the contract "specifically because the parties had become joint venturers." On the contrary, the contract permitted reimbursement only "[i]f Petricca elect[ed] to participate in the joint venture." Exhibit C (emphasis added).

Further, Petricca argues that the exercise of Pioneer's option to purchase the Petricca land could not have been a condition precedent to the creation of their joint venture because Massachusetts law mandates that contracts expressly and emphatically identify any such conditions. See Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, 577 N.E.2d 283, 288 (Mass. 1991). Its argument mischaracterizes Massachusetts law, however, since "emphatic or precise words are not absolutely necessary to create a condition [precedent] . . . [which] may nonetheless be found to exist if the intent of the parties to create one is clearly manifested in the contract as a whole." Id. (emphasis added). As already explained, supra, the integrated contract itself clearly demonstrates that the Pioneer-Petricca relationship, during the preliminary right-to-build phase, did not meet muster under any pertinent Shain criterion. Accordingly, the summary judgment ruling must be upheld.

B. **Chapter 93A Claim**

16

Finally, Petricca argues that the district court committed reversible error by dismissing, pursuant to Federal Rule of Civil Procedure 12(b)(6), the claim that Pioneer violated the Massachusetts unfair or deceptive trade practices statute by abandoning the joint venture.  See Mass. Gen. Laws Ann. 93A, § 11 ("Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two . . . may bring an action in the superior court . . . for damages . . . .").[6]  Petricca concedes, as it must, that Chapter 93A generally is applicable only to business dealings "between discrete, independent business entities," not to "disputes between parties in the same [joint] venture," as the latter are not regarded as having arisen in "trade or commerce."  Szalla v. Locke, 657 N.E.2d 1267, 1269 (Mass. 1995) (citing cases).  See Linkage Corp. v. Trustees of Boston Univ., 679 N.E.2d 191, 207 n.33 (Mass.

---

[6]We review the Rule 12(b)(6) dismissal de novo, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor.  See Tompkins v. United Healthcare of N.E., Inc., 203 F.3d 90, 93 (1st Cir. 2000).

17

1997); see also Ansin v. River Oaks Furniture, Inc., 105 F.3d 745, 760 (1st Cir. 1997).[7]

Petricca attempts to distinguish Szalla on the ground that Pioneer and Petricca unquestionably remained two distinct business entities for at least the first thirty days of their contractual relationship, whereas the parties in Szalla had asserted from the outset an intent to enter into a joint venture.  Even assuming arguendo that Petricca might have retained Chapter 93A protection for the initial thirty-day period, however, all actions undertaken by Pioneer which allegedly violated Chapter 93 occurred after Petricca voluntarily elected to participate in a joint venture in July 1992, during which time Pioneer filed rezoning applications and negotiated the alternate land deal.  During that period, even if no joint venture had yet been formed, the parties unquestionably negotiated the details of their future joint venture.

Indeed, the Szalla court itself rejected the very distinction now advanced by Petricca:

> The plaintiff claims that some of the misrepresentations occurred prior to the formation of their association and therefore it

---

[7]Thus, the authority most prominently relied upon by Petricca, see NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28 (1st Cir. 1994), is inapposite, since (1) it dealt with negotiations for an outright sale of property between two independent business entities which had expressed no intention to enter into a joint venture, see id. at 29-30, and (2) NASCO predated the Szalla decision.

18

> was an "arms-length transaction." The plaintiff's argument is unavailing because the prior events occurred in the course of developing their mutual association which culminated in an agreement and an exchange of property and services. <u>The association between the plaintiff and the defendant in the interests of forming a business venture together is not the kind of commercial transaction regulated by the statute.</u>

<u>Szalla</u>, 657 N.E.2d at 1270 (emphasis added). The highlighted sentence in the above quote completely undermines the Petricca claim. That is to say, by its July 1992 election and its negotiation of the terms of a joint venture, Petricca forfeited any Chapter 93A protection, without regard to whether its election would have culminated in the formation of a joint venture.

### III

### <u>CONCLUSION</u>

**Accordingly, <u>the</u> <u>judgment</u> <u>of</u> <u>the</u> <u>district</u> <u>court</u> <u>is</u> <u>affirmed</u>, <u>with</u> <u>costs</u> <u>to</u> <u>appellees</u>. SO <u>ORDERED</u>.**

19